## Richmond.

### NEW YORK LIFE INSURANCE CO. v. C. W. CLEMMITT AND WIFE.

April 5th, 1883.

1. APPELLATE COURT—*First appeal—Second appeal.*—It is a settled rule that decrees of the court of appeals on questions decided by the court below, are conclusive, and on second appeal these questions cannot again be raised.

2. IDEM—*Instructions—Second trial.*—Instructions given at second trial conformable to principles established on first appeal, cannot be questioned on second appeal. As to instructions then refused, inconsistent with those principles, the same rule applies. So far as instructions then given or refused, contain principles not established on first appeal, they will, of course, be considered on second appeal.

3. INSURANCE COMPANY—*Premiums—Dividends.*—Life policy being repudiated as abrogated by non-payment of premiums, *flagrante bello,* and suit being instituted for its adjustment, and the adjustment proceeding on the basis of the payment of all premiums with interest, such premiums *are paid,* and the insured is entitled to his dividends just as though he had paid his premiums annually, the delay being occasioned by the company's own act.

Error to judgment of circuit court of Richmond city, rendered on 3d January, 1883, in the action of C. W. Clemmitt and Myra P., his wife, who was daughter of George W. Minnis, *against* The New York Life Insurance Company. This is the sequel to the case of *Clemmitt and Wife* v. *The New York Life Insurance Company,* which was decided by this court 30th March, 1882, and is reported in 76 Va. Reports, 355. In November, 1857, G. W. Minnis insured his life with said company for $5,000, for the sole benefit of his wife, Mary Jane, with the further conditions stated in the policy, "that in case of the death of his wife before his decease, the amount of the insurance should be payable after her death to her children." Myra P. was the only

child. Insured paid the premiums up to the war. Shortly after the war he saw the president of the company, who said the policy was annulled by the war, and repudiated it. Mary Jane died in 1868.

This suit was brought in 1874, to recover damages for the breach of the policy. The insured died in April, 1877, pending the suit which was decided in the circuit court against the plaintiffs in 1879, and they obtained a writ of error to this court, which reversed the judgment with costs. This court then decided that as soon as the wife died the child's rights vested ; that after the company repudiated the policy, the wife might have sued in her own name for damages for the breach, or await the event whereon the sum assured became payable *to her* if she survived the insured, *to her children* if he survived her ; that the war only suspended, did not abrogate the policy ; that where the breach occurs and suit is brought during insured's life, and he dies before judgment, the value of the policy is the present value, as of the date of the company's repudiation of the sum assured, and payable at the death of the insured ; to be diminished, however, at the same date, by the present value of the premiums subsequently accrued, and also by the amount of the premiums previously accrued (which are unpaid) and interest thereon.

The action having been remanded for trial on these principles, the second trial was had, and resulted as aforesaid in a judgment for the plaintiffs, to which, in turn, the defendant company obtained a writ of error and *supersedeas* from one of the judges of this court.

The instructions given and those refused by the circuit court, and the other proceedings had, are set forth in the opinion of the court.

*Johnston, Williams & Boulware,* and *W. W. & B. T. Crump,* for the appellants.

*Paul & Davies,* for the appellee.

LACY, J., delivered the opinion of the court.

The questions involved in this case when first before this court were duly heard and considered, and the circuit court, which had rendered judgment for the defendant company, was reversed, and the case remanded to the said circuit court for a new trial to be had therein.

In the first trial in this court, the court said, "on the trial of the issues below, the court instructed the jury that 'if they believed from the evidence that the defendant repudiated its contract in June or July, 1865, a cause of action then accrued to Mary Jane Minnis, the wife of George W. Minnis, if she were then alive, and if they believe that she died after the cause of action accrued, the same survived to her personal representative and not to the plaintiff, Myra P. Minnis, and they should find for the defendant.' This instruction resulted necessarily in a verdict for the defendant, as the facts left to the determination of the jury on which the direction was based, were clearly established. We are of opinion that this instruction was clearly erroneous."

The right of the plaintiff, Myra P., to maintain the suit was thus established and finally settled.

Proceeding to pass upon other errors assigned, this court said, "instructions were asked for on both sides, which were refused. Some of them relate to the effect of the war on the contract of insurance, the insurer and insured not residing during hostilities in the territory, and under the dominion of the same belligerent power. We see no objection to the first instruction prayed for by the plaintiffs. It announces in substance the well settled law of the state, that the war did not abrogate, but merely suspended the contract, and the further proposition, equally sound, that the repudiation by the company of the binding force of the contract, excused a tender of premiums, and what may be inferred from the views already expressed, is, in our opinion, correct, that after the company had repeated its denial of further obligation, the

appellant had a right of election between remedies, either to sue at once for damages for breach of the contract or to await the event on which the sum assured became payable under the policy, and when it became payable, to sue for its recovery.    The second instruction asked for by the defendant was properly refused, because it makes a tender of the premiums after the war essential to a recovery, though a tender may have been excused by the conduct of the company.    The other instruction had reference to the measure of damages.

If the assured had continued alive until and after the trial, with no deterioration of health, except such as naturally resulted from mere efflux of time, the case of *The Universal Life Insurance Company* v. *Binford and others*, lately decided by this court, would have furnished the rule; or, if the plaintiff had brought her suit after the death of the insured, the amount of recovery would have been easily determined.

The difficulty is created by the death occurring after the commencement of the action and before trial.    In estimating the damages in this suit we see no good reason why the jury may not consider the event, the death of the insured, as an element in fixing the quantum of the damages.

When the life ceases there is no occasion for speculation.    The event on which the sum assured becomes payable has actually occurred, and is susceptible of proof, and there is no occasion to consider the duration of life according to the tables of longevity. There has been no case adjudicated precisely in point.    "* * * But we say in the present case, the value of the policy is the present value, as at the date of the repudiation of the contract by the company of the sum assured and payable at the death of the person whose life was insured, to be abated, however, by the present value, at the same date, of the premiums subsequently accrued, and also by the amount of the premiums previously accrued (which are unpaid) and interest thereon.    The present value of the sum thus ascertained and abated, with interest from

the date of the repudiation of the contract, would seem to be the just measure of recovery in the case."

The case was again tried, as stated above, in the circuit court of Richmond city, on the 3d day of January, 1883, and there was a verdict and judgment for the plaintiffs; to which judgment the defendant company applied to this court for a writ of error and *supersedeas*, which was awarded on the 26th day of January, 1883.

The first exception in this case is the refusal of the court to give seven instructions asked for by the defendant, and to the action of the court in giving one instruction asked for by the plaintiff, and in giving one instruction not asked for on either side, but given by the court in lieu of certain instructions asked for and refused by the court. The first instruction asked for by the plaintiff and given by the court is as follows:

"The policy of insurance in the declaration set forth did not lapse by the war separating the parties, so that premiums could not be received or paid as contemplated in that contract. And if the jury shall find from the evidence that within a reasonable time after the close of the war the defendant, on being approached by a representative of the beneficiaries of the policy, wholly repudiated the same as a contract binding on it, it was not necessary to make formal tender of the premiums which had accrued during the war, nor of subsequently accruing premiums to continue the obligation of the defendant under the policy. And if the jury shall further find from the evidence, that after the death of Mrs. Minnis, on being approached on behalf of Myra P. Minnis, defendant again repudiated the policy as a contract binding on it, because of a supposed lapse by reason of the war, such a repudiation was a breach of the contract on the part of the defendant, and Myra P. Minnis had an election to recover her damages for said breach, or to wait the maturity of the contract and recover under the same."

We are of opinion that the circuit court did not err in giving

the said instruction, it appears to be in strict conformity to the opinion of this court, directing the further proceedings in the said circuit court in this case, as we have seen above.

The instruction given by the court marked "A, B, C," and excepted to by the plaintiff in error, is as follows:

"If the jury shall believe from the evidence that there was a breach of the contract, after the death of Mrs. Minnis, as set out in first instruction, the jury are instructed that they should assess the plaintiff's damages by calculating the present value as of the date of such breach, of the sum of $5,000, payable after death of George W. Minnis, within sixty days thereafter, and in a reasonable time in addition thereto to forward proof of death of George W. Minnis, and deducting therefrom, 1st. The amount of $220 due defendant by notes of Minnis, with compound interest thereon from November 13th, 1860, to the date of the breach. 2d. The amount of the premiums due respectively November 13th, 1861, 1862, 1863, 1864, 1865, 1866, 1867, and 1868, less dividends, if any, due by defendant to the plaintiff in each year, and simple interest on the balance of each from the day it fell due, until the date of the breach, and 3d. The amount of the present value as of the date of the breach of the premiums which thereafter matured during the life of George W. Minnis, to-wit, the premiums due respectively November 13th, 1869, 1870, 1871, 1872, 1873, 1874, 1875, and 1876. But if the result of such estimate, principal and interest, to the date of the institution of the suit, shall exceed the sum of $2,000, the jury are instructed that their verdict should be limited to that amount, and the jury may allow interest from such date after the institution of the suit as they may deem right upon the amount of the principal."

Considering and applying to this instruction, the rule laid down by this court for ascertaining the amount of the damages in this case, the said instruction seems to be based upon said rule so laid down, except that by the said instruction the jury is instructed to diminish the amount of the premiums in each year

unpaid and accrued before the date of the breach, by the dividend due by the defendant to the plaintiff in each year, and this is assigned as error by the plaintiff in error.

That question has not been passed upon by this court; this policy being a participating policy in which a higher premium is paid by the insured in consideration of the interest in the profits allowed assured by the participating or mutual character of the policy, it would seem that a fair method of ascertaining the annual premiums due under the policy by the insured to the insurer, would be to deduct from the premiums due from the insured to the insurer, the dividend or the amount due annually from the insurer to the insured. If the insured by the terms of the policy owed each year to the insurer a certain sum called a premium, and the insurer owed each year to the insured a certain other sum called a dividend, to ascertain the true balance due between the two contracting parties, one sum so due should be deducted from the other sum so due, and the clear residue so ascertained would be the sum annually to be paid, and if not so annually paid, then upon a settlement, upon the principles stated above, the true amount so ascertained should be properly credited, and this simple process would not be affected by the fact that the one sum was an amount ascertained and the other sum was a per cent. in the form of a dividend to be deducted. And the argument urged by the plaintiff in error, that this dividend was not so credited between the parties during the period when they had annual settlements, before they were separated from each other by the war, is not supported by the facts of the case. In the first place, the whole amount of the premium in each year does not appear to have been paid up, but a part of it in each year was left in the hands of the insured, and his note taken for such part as remained unpaid; and in the next place the amount of the dividend so properly to be credited was a fact within the ·knowledge of one party, and not originally certainly within the knowledge of the other; and the notes having been taken, as we have seen, the transaction for each

year was obviously not closed and finally ended.   If the insured was entitled to the dividend in each year, and the plaintiff in error admits that he was, and it was not paid to him, then it would seem but just to credit him with it now, when you charge him with his annual premium.   Another objection urged by the plaintiff in error to this process of crediting dividends each year is, that this insured did not contribute his share toward the annual profits of the company, and as the dividends could only be obtained by the company by the annual payments of policyholders, this assured not having contributed his annual share toward this end, could have no just claim on the dividends thus obtained without his contribution, and without his aid.   But a complete answer to this is, that this settlement or adjustment between the parties proceeds upon the basis of the payment by the insured of all his premiums with interest, and upon the settlement brought about by this suit, these premiums *are* paid, and upon *a basis of annual payments*.   The *delay in their payment* having been caused by the company's own act in repudiating the policy.

The remaining exception urged by the plaintiff in error is to the simple interest allowed under the instruction.   This exception seems to be covered by the terms of the rule laid down by this court in this case upon the former appeal seen above.   The court then said, "to be abated by the present value at the same dates of the premiums previously and subsequently accrued, which are unpaid and *interest thereon from the times they were respectively payable.*"   This was a direction for simple interest on these premiums, and the circuit court did not err in this case, at least it could not err, in thus allowing simple interest; it was so directed by this court, and having been so directed by this court in this case, the circuit court was controlled by it, and it is not subject to review by this court; it is settled, so far as this case is concerned.   "The decree of the court of appeals upon a question decided by the court below, is

final and irreversible, and upon a second appeal in the cause, the question decided upon the first appeal cannot be reversed."

In *White* v. *Atkinson,* 2 Call, 376, it was held that a "court of chancery cannot make any change in the terms of a decree from this court." See also *Price* v. *Campbell,* 5 Call, 115; *Campbell* v. *Price,* 3 Mun. 227.

In the *Bank of Virginia* v. *Craig,* 6 Leigh, 399, it was held that this court cannot examine the propriety of a decree made at a former term *inter partes,"* and *that,* although it was stated to be a case of great hardship. See *Towner* v. *Lane's adm'r,* 9 Leigh, 262, and opinion of Moncure, judge, in *Campbell* v. *Campbell,* 22 Grat. 665, "the conclusiveness of the decree of the court of appeals is the same whether the first appeal was from a final or interlocutory decree of the court below. All the decrees of the appellate court are in their nature final." See also *Bank of Old Dominion* v. *McVeigh,* 29 Grat. 554. And in this case the allowance of simple interest appears to have operated with no hardship upon the insurer, as all the calculations made in the settlement herein are upon the basis of simple interest, except the calculations upon the notes given by the insured, which were given, as we have seen, in the expectation of premiums. The reason of the circuit court for this treatment as to the notes is not apparent, but it is not excepted to by either side, and has worked no injury to the plaintiff in error. And the same basis having been observed and followed as to the premiums unpaid and accruing before the breach to be increased by interest, and the premiums unpaid and to accrue after the breach, to be diminished by interest, no injury has been done the plaintiff in error, as the respective periods before and after are about the same.

The second bill of exceptions is to the refusal of the court to set aside the verdict of the jury, because the verdict was excessive, and because the said verdict was contrary to the law and the evidence. We think this motion was properly overruled. The

jury followed the instructions of the court, and their verdict was in accordance with the law and the evidence, and the damages are such as grow out of the contract broken by the plaintiff in error, and being enforced by the court upon the principles stated above, the amount of the damages ascertained is the inevitable result of such settlement upon the principles laid down by this court in this case on the first appeal.

The refusal of the court to give the other instructions asked for by the defendant and mentioned in the first bill of exceptions in this case, was, under the circumstances, entirely proper. The court did not err in confining its instructions, so far as the same was applicable, to the rule laid down by this court in the case on the first appeal.

And as to the second instruction, especially as attempting to violate and overrule the well settled doctrine on that subject, as laid down by this court in the case of the *Mutual Benefit Life Ins. Co.* v. *Atwood's adm'r*, 24 Grat. 497, in the opinion of Bouldin, J., and other cases, the said instruction was properly overruled.

Upon the whole case, we are of opinion that there is no error in the judgment of the circuit court of which the plaintiff in error can complain, and we are of opinion to affirm the judgment.

JUDGMENT AFFIRMED.