# Staunton.

## McCormick's Ex'ors & Als. v. Wright's Ex'ors & Als.

### Absent, *Hinton,* J.

### October 7, 1884.

1. PERSONAL REPRESENTATIVES—*Devastavit.*—Where executor *as surety* for testator pays debts out of his own funds, he is entitled only to his ratable share of the assets to repay his advances; and by crediting himself with the full amount of those debts, he commits an error to the prejudice of the other creditors having unpaid debts of equal dignity.

2. IDEM—*Ex Parte Settlements—Impeachment.*—Where from face of settlement, it appears that executor has paid in full some debts and left unpaid, in part or wholly, other debts of equal dignity, such settlement stands impeached *per se.*

3. IDEM—*Statute of Limitations.*—As to fiduciaries themselves, there is no limitation except what results from staleness of demand or presumption of payment. Otherwise as to their sureties, Code 1873, ch. 146, § 9.

4. APPELLATE COURT—*First Appeal—Second Appeal.*—It is a settled rule that decrees of the court of appeals on questions decided by the court below, are conclusive, and on second appeal those questions cannot be again raised. *N. Y. F. Ins. Co.* v. *Clemmitt,* 77 Va. 366.

5. CO-EXECUTORS—*Liability—Rule.*—General rule as to joint executors, is that each is liable as principal for his own acts, and as surety for the acts of his companion. *Morrow* v. *Peyton,* 8 Leigh, 54. But where one assents to misapplication of assets by the other, or knowing his intent to misapply, he fails to interfere, and loss occurs, which by reasonable diligence he might have prevented, he thereby renders himself liable as principal for such default. *Caskie* v. *Harrison,* 76 Va. 85.

6. EX PARTE SETTLEMENTS—*Stated Accounts.*—The first have no analogy to the latter. The efficacy of the former, as evidence, rests upon long established usage and the supposed integrity of the tribunal appointed

by law for the adjustment of such matters; whereas a stated account is founded upon a supposed adjustment between the parties themselves. *Leake* v. *Leake*, 75 Va. 792.

7. FIDUCIARIES—*Sureties—Statute of Limitations.*—Action against sureties on fiduciary's bond, may be brought within ten years after accrual of right of action; that is, from return day of execution against fiduciary, or from time of right to require payment or delivery from fiduciary. *Sharpe's Ex'or* v. *Rockwood*, 78 Va. 24.

Appeal from two decrees of circuit court of Frederick county, rendered 24th November, 1882, and 3d December, 1883, respectively, in the cause of Daniel Wright's executors and others against Thomas Allen Tidball's executors and others.

Mr. Tidball died in 1856, and his will was probated 6th May of that year, and James Marshall and Province McCormick named therein as executors, duly qualified as such, giving bond in penalty of $70,000, with Henry M. Marshall, Francis McCormick, William Taylor, and Hugh H. McGuire, as sureties. They proceeded to administer the estate, and in September, 1857, for the first year, and in May, 1859, for the two succeeding years, their accounts were settled *ex parte*, and at last date, under the statute and at their requests, the debts of the estate were also audited by the same commissioner, and both being reported to the county court of said county, were, at its July term, 1859, approved and ordered to be recorded. The accounts were stated jointly, and also, at the request of the executors, separately, and resulted as follows: Due the executors, $4,058.20, with interest thereon from May 16th, 1859; due to James Marshall $4,277.58, and from Province McCormick, $228.04. There was another settlement confirmed August 6th, 1860, showing balance due James Marshall of $4,918.13, as of May 1st, 1860. And another confirmed March 16th, 1868, showing balance due James Marshall of $6,578.84, with interest on $4,937.17 from May 1st, 1868, and due by Province McCormick $305.82, with interest from that day on $199.45. These settlements were approved in September, 1868.

In October, 1878, the personal representatives of Daniel

Wright and H. M. Brent filed their bill on behalf of themselves and all other creditors of Tidball's estate, for settlement of executorial accounts and payment of debts. Province McCormick had died July 1st, 1873; Francis McCormick, April 16th, 1872, and Hugh H. McGuire in 1875.

In November, 1878, the cause was referred, *inter alia*, to settle executorial accounts. It was reported May 21, 1880, that Province McCormick was still chargeable with the balance of $305.82 and no more, and that James Marshall was indebted to the estate, $15,057.67, with interest on $9,927.52, from May 1, 1880; or $24,731.48, if he were charged with the Angus McDonald debt as lost by his negligence. The counsel for creditors excepted to this report, because it gave Mr. Marshall credit for payment in full of sundry debts for which he was surety for Mr. Tidball, whilst other debts of equal dignity remained unpaid in whole or in part, the assets being insufficient to pay all of the debts; such course being prejudicial to the unpaid creditors and a *devastavit*, and also because the report treated sundry loans as investments and allowed commissions. In conformity with the will, the executors had sold, in 1856, part of the real estate to Angus McDonald, for $10,000, whereof one-third had been collected; also down to the close of the war, the interest on the residue secured on the property, the valuable buildings on which having been destroyed during the war by the Federal forces, said residue was lost. Upon this report and the exceptions, in November, 1880, the court below decided that the executors should not be credited with any debt of the estate paid by them beyond the ratable share of such debt in the assets; that in the loans they were guilty of no then perceivable error; that they were not liable for the loss of the McDonald debt, and recommitted the cause to ascertain and distribute the funds.

From this decree an appeal was taken to this court. The error complained of was the exoneration of the executors from liability for the loss resulting from their alleged *laches* in fail-

ing to collect the McDonald debt, but the decree was affirmed and the cause remanded for further proceedings. Under the decree a report was filed November 14th, 1882, and ten days later a decree entered confirming the report, which showed that James Marshall, as executor, was indebted to the estate in ·$19,994.15, with interest, &c., and directed the payment thereof· by all the the parties to the executorial bond. But on motion to review, the decree was suspended and the cause recommitted on certain exceptions. A new report was filed June 3d, and on December 3d, 1883, a decree was entered amending the decree of November 24th, 1882, by reducing the amount from $19,994.15 to $19,225.99, with interest from November 20th, 1882, subject to credit for $722.07, with interest from June 1st, 1883, and ordering Holmes Conrad, executor of James Marshall, deceased' *de bonis testatoris*, the said personal representatives of Province McCormick, deceased, *de bonis testatoris*, the said personal representatives of Francis McCormick, deceased, *de bonis testatoris*, the said personal representative of Hugh H. McGuire, deceased, also *de bonis testatoris*, William Taylor and Henry M. Marshall, to pay to William L. Clark, general receiver of the court, the said amount, and decreeing that the relation of the estate of Province McCormick to that of James Marshall is that of surety, and of co-surety with the other obligors on the executorial bond, and that the statute of limitations is no bar to the relief asked for against said sureties, because the cause of action accrued within ten years before suit brought. From these decrees the said personal representatives of Province·McCormick, deceased, and of Francis McCormick, deceased, obtained an appeal and *supersedeas.*

*John J. Williams*, for the appellants.

I. It will be seen then that to sustain the decree complained of it is necessary to hold:

1. That it was a *devastavit* to make these payments.

2. That it was error in the *ex parte* settlements to give credit for such payments because a *devastavit* to make them.

3. That *therefore* the *ex parte* settlements should be sur-charged and falsified in the matter of these erroneous credits.

It is submitted that *there was no devastavit,* although the executor paid some debts in full, some in part, and some not at all, because he had a right to do so unless the assets of the estate *were insufficient* to pay all its debts. A *devastavit* is "a breach of official duty;" the statute lays down as the rule of duty, in the matter of the "order in which debts shall be paid;" *not* that in *all* cases and in *any* event shall the order there prescribed be followed, viz: "All other demands ratably," but only "when the assets of the decedent are not sufficient for the satisfaction of all demands against him." Code 1873, ch. 126, § 25.

For both what is said and left unsaid in this statute are alike significant of the meaning we claim for it. It lays down *no* fixed rule, to be followed without discretion and in all cases, for to do this was merely to omit the words " when the assets are not sufficient," &c. Nor does it prescribe *pro rata* payments unless the assets are sufficient, for it does not say so, but on the contrary, it does *not* prescribe *pro rata* payments except "where the assets are *not* sufficient."

And the reason for this was doubtless the recognition of the fact that it was often to the interest of an estate to pay debts otherwise than in the order prescribed; so as to pay off those pressing, bearing large interest, tying up property, &c.; or such a case as that of the testator here, who by his will empowered and desired his executors to dispose of his estate so as to save "from loss or inconvenience" any person " in any way respon-sible for him as security."

This view is indicated by our courts when it is said, "For surely, if there be a sufficiency of assets, it is of no consequence in what order they are paid."

*Braxton, Executor of Claiborne,* v. *Winslow,* 1 Wash. 33, or as is said in the report of same case in 4 Call. 33 :

"It is not a *devastavit* in the executor to pay debts of inferior dignity, if he shall retain assets enough to discharge those of higher degree."

This was just what was done here.   The will made *all* the estate, real and personal, assets in the hands of the executors for the payment of the debts.   They had thus enough to pay all in full at the time the disputed payments were made.

The bill says so, and the accounts in the record show a surplus of assets over the debts of $9,131.74, if you include the *Mc-Donald* debt.   It is the loss on this debt that has made the deficiency, and for this loss the court of appeals held the executors were not responsible, because owing to the unforeseen circumstances and not to their default in duty.

II. The liability here imposed was *barred by the statute of limitations.*

As already shown, it is based upon an alleged *devastavit*, which it has been submitted was no *devastavit*.   But if it was, what and when was it?   To pay to one creditor more than his *pro rata* share and to others less or none.   And the time of this *devastavit* was at the time of such payments, or of the yearly balances, or of the settlements in which they were charged up against, and thus appropriated the assets of the estate.   Taking either as the time, and the date of the *devastavit* was prior to July, 1860 (the date of the last of the settlements in which the disputed payments were credited), and thus more than ten years prior to the institution of this suit—October rules, 1878, for excluding the duration of the stay law, that is more than ten years.

The exception sustained by the decree of November, 1880, excepted to these payments because "*devastavits* as to the other creditors."   "The action of these creditors is not upon the accounts settled, but for the *devastavit*, and the right accrues ordinarily and the statute begins to run when the wrongful act is committed."   *Leake's Executor & al.* v. *Leake & als*, 75 Va. 803.

The appellees claim it was too late to plead the statute of limitations.

In reply, we submit "the only reason for requiring the defense to be made by plea or answer is, *that the plaintiff may have an opportunity, if he can, to take the case out of the operation of the statute.*" *Tazewell's Ex'ors* v. *Whittle's Adm'r & als.,* 13 Gratt. 344.

Here the exceptions setting up the statute endorsed June 9th, 1883, were filed in open court June 20th, 1883, thus plaintiff was given an opportunity to take the case out of operation of the statute by having it sent back to the commissioner or otherwise.

But this he did not do, because, as is seen, the grounds he relied upon were already in the case.

In same case, page 345, the principle is recognized that it not appearing that the statute offered a bar to the claim until after the bill, " the proper mode of making the defence, therefore, was by *exception* to the commissioner's report of the claim."

The bill did not state the claim with sufficient distinctness to enable the defendant to see at what dates plaintiff claimed his alleged cause of action to have arisen. The accounts exhibited were only a part of those in the case. Nor did he, although his attention was called to this by defendant's exceptions filed January 16th, 1883, and report recommitted at March term, 1883, file any specifications before the commissioner. And defendant was not bound to make this defence of limitations until plaintiff offered him this opportunity of doing so intelligently.

The fact that no exceptions setting up the statute of limitations was filed before the case went to the court of appeals does *not* preclude such exception now as too late by reason of this fact.

The decree of November 27th, 1880, affirmed by said decision, did not confirm the report settling the accounts—had merely decided four questions arising upon the exceptions thereto, and recommitted the cause.

This point of statute of limitation as defence of *surety* is certainly open—and so it was competent for defendants to raise the question as they did by . exception to the commissioner's report at any time before final decree. *Miller's Adm'rs* v. *Cook's Adm'rs*, 77 Va. 819.

The question of the statute of limitations was not settled by decree of November, 1880, and its affirmance by the court of appeals, as against the sureties.

The question of the statute had not been raised in the court below by any one, and hence was not decided by it until the decree now appealed from.

It was first raised in the court of appeals by James Marshall, and decided against *him,* because it had not been relied upon in the court below, and whilst the limitation of ten years applies to suits upon the executorial bond against the sureties, it was no sort of application to suits against the executor · "himself." *Frazier* v. *Frazier and als.*, 77 Va. 783–4.

*Quoad* this statute of limitation, then the sureties do not "stand upon the same ground" nor are "their rights involved in the same question" as the executor James Marshall, but on the contrary they "stand upon distinct and unconnected ground." "their rights are separate, &c., and not equally affected by the same decree or judgment." Hence, the cross appeal of James Marshall, *quoad* the statute of limitations did not bring up for adjudication the rights or claims of the sureties. *Walker* v. *Page*, 21 Gratt. 652–3.

The executors of Province McCormick had the right to plead the statute of limitations, though he was co-executor.

1. For reason stated in decree, p. 87.

2. *Even as against creditors or legatees,* when two executors execute a joint bond, they are liable as principals *only* for their *devastavits* committed by them jointly, or for moneys received by them jointly. For a *devastavit* committed, or money received by either *alone,* the other is liable only as his *surety. Caskie's Ex'or* v. *Harrison,* 76 Va. 94, 97, 98.. *Morrow's Adm'r* v. *Pey-*

*ton's Adm'r and als.,* 8 Leigh, 54, 63, 64, 65, 68, 69, 70, 75. *Cox and als.* v. *Thomas' Adm'rs,* 9 Gratt. 317–319. In which *Clark* v. *Slater* (cited by B. & B.'s note) is reviewed. *Peale* v. *Hickle and als.,* 9 Gratt. 443–4. Code 1872, ch. 146, § 59, "which could have been maintained had he given no bond."

The joint accounts of the executors do not make them jointly liable, because qualified by subsequent or contemporaneous separate accounts. L. Cas. in Eq. vol. II, pt. 2, p. 1796 (ed. 1877).

The decree of November 27th, 1880, did *not* decree the joint liability of the two executors.

· The questions involved in the present appeal are not precluded by the former decree of the court of appeals.

The suit is barred by *laches* of complainants in bringing their suit, the delay resulting in the death of all of the executors and their sureties, except James Marshall, before suit, and his death pending the settlements of the accounts. *Hatcher* v. *Hall,* 77 Va. 573.

III. The *ex parte* settlements have never been sufficiently surcharged or falsified; *i. e.*: with sufficient specifications—not in the bill, nor by any specification filed before the commissioner so as to give an opportunity to file thereto the equivalent of an answer or plea. *Leake* v. *Leake's Ex'ors,* 75 Va. 796, 804.

*Dandridge & Pendleton, Barton & Boyd,* for the appellees.

LEWIS, P., delivered the opinion of the court:

On the former appeal in this case it was held, affirming the decree of the circuit court: 1. That Mr. Marshall, one of the executors of Tidball, was entitled only to his *pro rata* share of the assets of the estate in payment of the advances made by him on account of certain debts of the testator, upon which he was bound as surety, and that, therefore, "in crediting himself with the full amount of those debts, he committed an error to the prejudice of the other creditors." 2. That the *ex parte* settlements of the

executors were sufficiently impeached by the allegations of the bill, the errors complained of being apparent on the face of the accounts; and 3. That the defence of the statute of limitations had not been interposed in the lower court, and could not have availed, if it had been, in favor of the executors themselves; that as to them, the responsibility is that of a fiduciary or trustee as to whom there is no limitation, except that which results from the staleness of the demand or the presumption of payment.

These questions must, therefore, be regarded as finally and conclusively settled as between the parties to that appeal. *Campbell* v. *Campbell*, 22 Gratt. 665; *Ins. Co.* v. *Clemmitt & Wife*, 77 Va. 366; *Frazier* v. *Frazier, Id.* 775; *Miller's Adm'r* v. *Cook's Adm'r, Id.* 806.

The questions, then, to be considered on this appeal relate, first, to the nature of the liability of the estate of Province Mc-Cormick, who was a co-surety with Marshall; and, secondly, to the liability of the estate of Francis McCormick, who was a surety on the joint bond of the executors.

In respect to the liability of joint executors, the settled general rule is, that each is liable as principal for his own acts, and as surety for the acts of his companion when they execute a joint official bond. *Morrow* v. *Peyton*, 8 Leigh, 54; 1 Lom. Ex'ors, 333. But when one of the executors actually or tacitly assents to a misapplication of the assets by the other, or knowing of an intended misapplication of the assets, he fails to interfere, and loss occurs, when by the exercise of reasonable diligence he might have prevented it, he thereby renders himself responsible as a principal debtor for such default. *Caskie's Ex'ors* v. *Harrison*, 76 Va. 85. In that case the ruling of Lord Langdale in *Williams* v. *Nixon*, 3 Beavan, 472, was referred to, where he said: "There can be no doubt that if an executor knows that the moneys received by his co-executor are not applied according to the trusts of the will, and stands by and acquiesces in it without doing anything on his part to procure the due execution of the trusts of the will, in respect of the negligence, he himself

will be charged with the loss." See the authorities collected in 2 Lead. Cases in Eq. (ed. 1877), part 1, 1794, *et seq.*

In the present case the executors united in making sales of the real and personal property, and made joint settlements of their accounts. They were both privy to the auditing of the debts of the estate, and thus McCormick had notice of the claim asserted by his co-executor to be reimbursed to the full amount of the debts which, as surety for the testator, he had discharged. Notwithstanding, he allowed his co-executor to collect the assets, and without interference or objection on his part to misapply them. He thereby became properly chargeable, at the suit of creditors, as a principal debtor for the loss that occurred, and not as surety, as was held by the circuit court. This, however, is a question of little practical importance in the present case, as the result to the appellees is substantially the same.

Most of the objections urged by the executors of the surety, Francis McCormick, are disposed of by the decree on the former appeal, to which they were parties. They rely on the statute of limitations and lapse of time, which defence, however, was not set up by plea or answer, but by exceptions to the master's report after the case went back to the circuit court. Without stopping to decide whether the defence was asserted in time, it is sufficient to say that it cannot avail under the circumstances of this case.

It appears that in the *ex parte* settlements of 1857 and 1859 the executors credited themselves with the debts in full, which Mr. Marshall, as surety, had paid out of his own means, thus showing a large balance due the executors on the face of the accounts; but, in point of fact, the greater portion of the money which was misapplied was afterwards collected, a part of it as late as the year 1870. The defence is founded upon a mistaken idea as to the effect of the *ex parte* settlements. As was said in *Leake's Ex'or* v. *Leake et als.*, 75 Va. 792, such settlements have no sort of analogy to stated accounts between individuals. Their efficacy as evidence rests upon the long established practice and

usage of the country, and upon the supposed integrity of the tribunal appointed by law for the adjustment of such matters; whereas a stated account is founded upon a supposed adjustment between the parties themselves.   But the statute itself prescribes the time within which an action may be brought against the sureties on an executor's bond, which is ten years after the right to bring the same shall have first accrued.   And it further provides, that the right of a person obtaining execution against the executor, or to whom payment or delivery of estate in the hands of the executor shall be ordered by a court acting upon his account, shall be deemed to have first accrued from the return day of such execution, or from the time of the right to require payment or delivery upon such order, whichever shall happen first. Code 1873, ch. 146, §§ 8 and 9; *Sharpe's Ex'or* v. *Rockwood et als.*, 78 Va. 24.   Here no order for the payment of money or delivery of estate by the executors was made by any court until the entry of the decree now complained of.   Moreover, it may be regarded as settled by the former decree of this court, that the executors were not in default as late as the year 1861.   The running of the statute was suspended from the 17th day of April, 1861, to the 1st day of January, 1869, and the present suit, which was brought to October rules, 1878, was begun within ten years after the latter date.

Equally unavailing is the defence founded upon alleged *laches* and lapse of time.   The suit was brought in the lifetime of the active executor, and it does not appear that by reason of the death of parties or the loss of evidence it has become impossible, or even difficult to do justice between the parties.   The defence was, therefore, properly overruled by the circuit court, and the decree, subject to the qualification indicated, must be affirmed.

The decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of

the decrees aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said decree of the 3d day of December, 1883, in so far as it holds that as co-executors there "is no joint liability, as executors, on the estates of James Marshall, deceased, and Province McCormick, deceased, and that the relation of the estate of the latter to that of the former, is that of surety" is erroneous. This court being of opinion, for reasons stated and filed as aforesaid, that the liability of the estate of the said Province McCormick, deceased, is that of a joint principal debtor with the estate of the said James Marshall, deceased. It is therefore considered and ordered, that in this particular the said decree be, and the same hereby is corrected, and as corrected, affirmed. And it is further considered and ordered that the appellees recover of the appellants their costs by them expended, &c., &c., &c. The costs and damages to be paid by the appellants out of the estates in their hands, respectively, to be administered, &c., &c. Which is ordered to be certified, &c., &c.

DECREE AFFIRMED.