## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### FINDLAY v. TRIGG'S ADM'R AND ALS.

#### JUNE 30th, 1887.

1. APPELLATE COURT—*Res judicata.*—A decree of this court affirming a decree of the lower court is a final determination between the parties and their privies of all questions which were, or might have been, raised on the appeal.   *Campbell* v. *Campbell*, 22 Gratt. 649.

2. PERSONAL REPRESENTATIVES—*Sureties—Devastavit.*—Where in suit against administrator and his sureties for a *devastavit* in paying debts of an inferior class in preference to debts of a higher class, the record shows that there is a deficiency of assets, and that the funds in his hands embraces money that came to him as commissioner of sales of lands, as well as money that came to his hands as administrator, without showing the respective amounts of each, there can be no decree until there has been an account of the amount of each, respectively, as those sureties are not accountable for the money that came to his hands as such commissioner.

3. IDEM—*Substitution—Creditors—Legatees.*—Where administrator, out of intestate's assets, voluntarily pays debts of inferior class in preference to debts of higher class, and there is a deficiency of assets, he is not entitled to have the creditors so paid refund.   The case has no analogy to the case of an executor paying legacies before paying the debts, where the executor is entitled to be substituted to the creditors' right to have the legatees refund.

Appeal from decree of the circuit court of Washington county, rendered February 28th, 1885, in the chancery cause of F. S. Findlay, complainant, against John A. Campbell and *al.*, defendants, and D. Trigg's administrator, complainant, against W. J. Solomon and *al.*, defendants.   The object of the first cause was to hold said Campbell and

his sureties, as administrator of D. Trigg, deceased, liable for a *devastavit* in paying debts of an inferior dignity before paying the higher grade debt of the complainant. The object of the second cause, which was brought on by a petition filed in the first cause, was to have the creditors of the inferior class, who had been so paid, refund. The circuit court dismissed the bill, overruled the demurrer to the petition, and decreed that the creditors who had been so paid should refund. From this decree Findlay obtained an appeal and *supersedeas.* Opinion states further facts and points raised.

*W. H. Bolling,* for the appellant.

*James H. Gilmore* and *White & Buchanan,* for the appellees.

This cause was before court of appeals in the year 1879, and is reported in 32 Gratt. at page 76, in the name of Robertson against Trigg's administrator. That appeal was from decrees of date October 23d, 1875, and January 15th, 1876. By reference to decree of court in that case, on page 90 of 32 Gratt., it will be seen that those decrees, in every respect except in regard to the question of contribution, and in regard to Robertson's bond for $5,917.63, have been affirmed. Every question here now which appellant is making, except upon the petition of John A. Campbell, commissioner, had been made before the circuit court before cause was heard in court of appeals. See Findlay's exceptions of October 12th, 1875, and decrees of October 23d, 1875, and January 15th, 1876, in old record submitted with this. This is an effort to *review* a decree of court of appeals, which can only be done at this time upon the ground of *after-discovered evidence,* and even then the party must make a strong case. There is no pretense of

that sort in this case. See *White* v. *Atkinson,* 2 Call. 376; *Price* v. *Campbell,* 5 Call. 115; *Campbell* v. *Price,* 3 Munf. 227; *Bank of Virginia* v. *Craig,* 6 Leigh, 399; *Touner* v. *Lane's Adm'r,* 9 Leigh, 292; *Campbell's Ex'or* v. *Campbell,* 22 Gratt. 673.

The appellant made no point in the court below that he had paid over money due from him on land purchase. If that had been true, he should have made it there, and he can make it there yet, for nothing has been settled upon that point in court below, and so his appeal upon that question was premature.

For these reasons it is submitted that decree below should be affirmed.

LEWIS, J., delivered the opinion of the court.

On the former appeal in this case it was held that Robertson and Galt were preferred creditors of the estate of Daniel Trigg, deceased, and that as such they were entitled, upon the equitable principle of contribution among sureties, to be paid out of the assets of the estate one-fourth of the amount paid by them to the United States, as sureties of L. H. Trigg on his official bond as collector of customs at the port of Richmond. The case is reported under the style of *Robertson* v. *Trigg's Adm'r,* 32. Gratt. 76.

The appellant, Findlay, is the assignee of the Galt debt. The personal assets of the estate have been exhausted; unpreferred creditors have been paid in full, leaving a large balance due and unpaid on the Galt debt. After the case went back to the circuit court, the appellant filed his bill, charging a *devastavit* by the administrator, and seeking to hold the administrator and the sureties on his bond liable therefor. The administrator answered the bill, denying that he had wasted the estate, and averring that he had

properly administered the assets which went into his hands as administrator. About this same time he also filed a petition as commissioner in the first-named cause, alleging that certain unpreferred creditors of the estate, of whom the appellant, as executor of Alex. Findlay, deceased, was one, had been paid in full, to the prejudice of the preferred creditors, and praying that they be compelled to refund so much as would be necessary to pay the Galt debt. To this petition, or amended bill as it is also called, the executor of Findlay demurred.

The causes came on to be heard together, when the bill of the appellant was dismissed, and the demurrer to the petition was overruled. And it was further decreed that the parties to whom overpayments had been made should be required to refund the sums overpaid them, respectively, when ascertained. It is this action of the court which we are now called to review.

One of the grounds upon which the bill charges a *devastavit* is the payment in full by the administrator of certain unpreferred claims against the estate, which are designated in the record as Nos. 68, 93, 94, 95, and 96, respectively. If this were the only ground upon which relief is prayed, it is clear that the claim of the appellant could not be sustained; for substantially the same objection was embodied in the exceptions of the appellant, as executor of Alex. Findlay, filed on the twelfth of October, 1875, and the report of the commissioner allowing the administrator credit for those payments, and to which the said exceptions were filed, was confirmed by the circuit court by the two decrees from which the former appeal was taken, and this court affirmed those decrees, except as to the Robertson and Galt debts and the bond of Robertson. It is true it does not appear that any question as to the validity of those payments was raised in this court, but that does not at all affect the finality or conclusiveness of the decree

which was entered. In other words, the matter is *res judicata,* and that without regard to the soundness of the objection, had it been insisted on at the proper time.

The cases in support of the proposition that a decree of this court affirming a decree of a lower court is a final determination between the parties and their privies of all questions which were, or might have been, raised on the appeal, are numerous and familiar. In *Price* v. *Campbell,* 5 Call. 115, it was held that the law in such case supposes everything contained in the record to have been decided on, and that a contrary doctrine would violate the wisely established rule that *interest reipublicœ res judicatas non rescindi.*

Following this and other previous decisions, the court in *Campbell's Ex'or* v. *Campbell's Ex'or,* 22 Gratt. 649, used this language : " An appeal from a decree brings up the whole proceedings in the case prior to the decree; and either party can have any error against him in those proceedings corrected without the necessity of a cross-appeal in any case. If a party fail to complain of any such error, and a decree be made upon the appeal, without correcting or noticing the error, such party will be concluded by the decree from appealing afterwards." See also *N. Y. Ins. Co.* v. *Clemmitt,* 77 Va. 366; *Effinger* v. *Kenney,* 79 Id. 551; *Stuart & Palmer* v. *Preston,* 80 Id. 625.

But the bill in the present case further alleges that after the case went back to the circuit court, the administrator, in disregard of the mandate of this court, paid out of the personal assets of the estate to unpreferred creditors more than would have been sufficient to pay the Galt debt. We are unable, however, owing to the imperfect condition of the record, to decide whether or not this allegation be true. The case was remanded to the circuit court in 1879, and the only information furnished by the record in relation to the assets then or afterwards in the hands of the ad-

ministrator is a statement designated as "Statement V," which purports to be a statement showing the unadministered assets in the hands of John A. Campbell, *administrator and commissioner,* as of the twenty-first of January, 1880, and first June, 1880," which shows an aggregate of $13,049.07. But how much of this fund was in his hands as administrator, and how much as commissioner of the court, we are not informed; and of course the sureties on the administrator's bond cannot be held liable for any default of their principal in respect to the fund in his hands as *commissioner* arising from the sale of the real estate. The case must, therefore, go back to the circuit court for the necessary accounts to be taken in order to a final decree.

We are also of opinion that the decree appealed from is erroneous in overruling the demurrer to the petition of John A. Campbell, commissioner. The prayer of the petition is that certain creditors, who are made defendants to the petition, be required to refund so much of the money paid to them on account of their respective claims as will be sufficient to discharge the Galt debt. But, treating the petition as though it had been filed by Campbell as administrator, it makes no case upon which a decree in his favor can be properly rendered; for the payments which are sought to be recovered back were not only made in good faith, but they were voluntarily made, and with full notice on the part of the administrator of the Galt debt; and this is substantially admitted in the petition itself. Upon what ground, then, can the defendants be compelled to refund the money which they have thus received? Clearly there is none. In such case a creditor to whom a payment is made "has," in the language of Gibbs, J., in *Brisbane* v. *Dacres*, 5 Taunt. 144, "a right to consider it as his without dispute; and it would be most mischievous and unjust if he who has acquiesced in the right of such

voluntary payment should be at liberty at any time within the statute of limitations to rip up the matter and recover back the money."

A leading case on the subject is *Carson* v. *McFarland,* 2 Rawle, 118; S. C., 19 Am. Dic. 627. There an administrator paid a certain claim against the estate of inferior dignity, and it afterwards appearing that the assets were insufficient to pay the preferred debts, he brought his suit against the creditor whom he had paid in full to recover back the money so paid; but it was held that he was not entitled to recover. "The hardship on the plaintiff," said the court, "may be great, but the hardship on the defendant, if called on to refund, would not be small; and the confusion, inconvenience, and general uncertainty which would follow from a decision that an honest creditor, who had gotten an honest debt, was liable to be sued and compelled to pay, would be so great, would make the settlement of estates so uncertain and interminable, that we think the plaintiff ought not to recover."

The circumstances of the present case illustrate the harshness and injustice of a different rule. The defendants in the petition are personal representatives, and the money which they have been decreed to refund was received by them in the regular administration of their respective trusts. It was their duty to disburse it, and they presumably have done so. If they could now be compelled to refund it, without any recourse against those to whom they in turn have paid it, the hardship would be manifest and oppressive. The very statement of the proposition is a sufficient refutation of the position taken in the petition.

There is no analogy between a case like the present and that of a legatee who is compelled to refund for the benefit of creditors; for the legatee takes subject to the liability of being compelled to refund at the suit of a creditor, and

it seems that where a personal representative has acted in good faith, and has not been culpably negligent, he will be substituted to the right of the creditor whom he has been compelled to pay. *Davis* v. *Newman,* 2 Rob. 694; *Lewis* v. *Overby's Adm'r,* 31 Gratt. 601. But no such liability rests upon a creditor who receives payment in good faith of an honest debt from an executor or administrator. It is not incumbent upon him to inquire whether or not there are preferred creditors who have not been paid. That is a matter for the personal representative, not for him. And he has a right, as we have seen, to consider the money paid as his own, and to use it as such. The law imposes upon him no liability to refund at the suit of another creditor, and we have been referred to no case, and are aware of none, in which a proceeding like the present has ever been sustained.

The decree will, therefore, be reversed, and the cause remanded to the circuit court for further preceedings in conformity with this opinion.

DECREE REVERSED.