Richmond.

GOLDSBOROUGH AND OTHERS V. WASHINGTON AND OTHERS.

March 9, 1911.

1.  WILLS—*Construction*—*When "Or" to Be Construed "And."*—In order to give effect to the intention of a testator it is frequently necessary to read "or" as if it were "and," and *vice versa*. The same is true also of deeds. Wherever the gist of the limitation is that the estate is to go over if the devisee fails to attain a certain age or to have issue, the word "or" must be read "and," unless the instrument manifests a different intent, and both contingencies must happen before the limitation over will take effect; and if either event happen—if the devisee either attains age or has issue—the estate vests.

2.  WILLS—*Construction*—*Intention of Testator*—*"Or" Construed as "And"*—*Case in Judgment.*—In construing a will, the intention of the testator, so far as it can be ascertained from the will, taking every clause and provision in it, and considering the condition and circumstances of the estate, and the relations of the testator and the various persons concerned, is to govern and be carried into effect so far as it can be done consistently with the rules of law. If, in so construing a will, the word "or" construed disjunctively would produce an absurdity, or defeat the manifest object of the testator, then it will be construed conjunctively if by so doing the object of the testator will be accomplished. In the case in judgment, the limitation over was in the event the first taker died "under age, or single, or childless," and it is held that "or" is to be construed "and," so that the limitation over does not take effect except upon the happening of all three of the events mentioned.

Appeal from a decree of the Circuit Court of Mathews county. Decree for the defendants. Complainants appeal.

*Reversed.*

The opinion states the case.

*Moore, Barbour & Keith, W. D. Evans* and *J. Boyd Sears,* for the appellants.

*C. E. Cary,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The question involved in this appeal is: What estate did the children of William H. Roy by his second marriage take under his will in the property devised therein? He left surviving him two daughters by his first marriage, a widow—his wife by a second marriage—and three infant daughters by that marriage.

The provisions of the will, which is a long one, most material to the question before the court are as follows:

1. "I am anxious to make my wife comfortable, and shall endeavor so to provide, and in construing my meaning, that should always be referred to."

2. "I direct that my wife be assigned dower in Green Plains of all my land instead of each separate tract (unless she wishes otherwise) . . . "

3. "At the end of the year in which I may die, my estate may be divided as hereafter directed, except as to what I have previously given my wife. And here I will remark that sometime before my present marriage, I executed to my friend James A. Seddon an obligation by which I secured to my three children by my first marriage, to-wit: James H., Ann S. and Susan E. Roy, the sum of twenty thousand dollars at my death."

4. "On the death of my son James, his part survived to his two sisters, Ann and Susan. I also reserved the right in the aforesaid obligation of settling the amount secured in the way I may think best."

5. "Now whilst I intended to secure to my children of the first marriage the amount covered by the obligation

14

aforesaid under all contingencies as far as it was in my power, I think it right to make my children of the second marriage, *equal with those of the first marriage,* and this I can do, and have a right to do out of my own property. To carry out my intention in this respect, I direct the following course pursued: I devise that twenty thousand dollars be raised out of my stocks, bonds, personal property *or* any property directed to be sold and set aside for my two daughters, Ann S. Rutherford and Susan E. Carter, in satisfaction of the obligation for that amount executed to James A. Seddon."

6. "Then I wish ten thousand dollars apiece raised and set aside for my three daughters by the last marriage, Euphan W., Mary M. and Ellen D. Roy.

"And to render this easier to be done, after my wife's dower has been assigned her in Green Plains as aforesaid, let the remaining portion of Green Plains be applied as far as it will go to raise the sums of ten thousand dollars apiece for my three daughters by the last marriage. Green Plains embracing improvements, must be valued at thirty-five dollars an acre.

"Add to this the value of the portion of Green Plains held by my wife in right of dower, and subject to her life estate, the value to be ascertained by three or more discreet persons, selected by my executors. Then raise the residue out of my personal property not otherwise disposed of, *or* the sales of any property directed to be sold."

7. "In this way, Green Plains supposed to contain seven hundred and fifty acres will remain to my wife and her three children, Euphan W., Mary M. and Ellen D. Roy."

8. "My children being so far made equal, I direct that my three children, Euphan W., Mary M. and Ellen D. Roy shall each receive fifteen hundred dollars apiece to finish their education, and thus in that respect place them on equality with their married sisters who have received expen-

sive educations.    This is on condition that they have not finished schooling at my death.    All being done as aforesaid, and my wife having received the moneyed bequest to her, I direct the rest of my moneyed estate (subject to two small legacies to my nephews, James P. and William H. Roy), to be divided as follows: One-third to my wife, and the remainder equally between my five daughters."

9. "These several matters being arranged.    I direct the rest and residue of my estate to be equally divided between my five children above *or* before named."

10. "Whatever I have given either of my children in this my will (unless otherwise expressly directed) I devise to them in trust for their sole and separate use and benefit, free from all marital rights of their husbands, and in the case of Ann and Susan this extends to the ten thousand dollars in lieu of the amount secured by the obligation to James A. Seddon, and is in fact carrying out the power vested in that instrument.    But whilst I thus limit the devises to my daughters, my executors may intrust my daughters, whether married or single and of age, with the possession and use of their property, and they may by the aid of my executors from time to time change the investments of their property, the reinvestments being subject to the same limitations."

11. "I leave my wife guardian of her three children as long as she remains *single,* and request that the court will not demand security of her.    I empower her as long as she remains *single* to apply the profits of their estate to their support and education without returning any account of the same, knowing that as she has been ever kind and affectionate as a wife, she will discharge her duty faithfully as a mother.    I further provide that should either of my three younger daughters marry, and their mother continue *single,* she may if she pleases, continue to hold said daughters portion of Green Plains, during her life and widowhood,

accounting for said daughters portion of the property or paying her a fair rent for the same. This provision is intended to prevent my wife's being molested by the husband or husbands of either of her daughters."

12. "If either of my three children by the last marriage die under age or single or childless, what I have given her in this will shall go in equal portions to *he* mother and sister of the whole blood, if her mother remains single, if not then entirely to the surviving sisters of the whole blood, and this clause also applies to the portion that either may receive from a deceased sister."

13. "I have endeavored to do justice to all; if I have failed, I regret it."

14. "Before closing this will I will insert a provision which I intended to make in the previous part of this will, to-wit, that if at any time whilst my wife remains *single,* and my younger children minors, my wife on mature reflection is convinced that the interest of her children and herself require that Green Plains and the seventy-five ......
of Church Swamp be sold, she is empowered to make the sale. If either of her three children or all are of age, and my wife single wishes a sale, the consent of the child or children of age must also be given before the sale can be made.

"If my wife marries, then to enable her to make the sale, the consent of the guardians of the minor children and child or children of age must be obtained to enable my wife to make the sale. The sale may thus be made by my wife to affect a division, as well as for other objects.

"If the sale is made, each will retain her rights in the proceeds of the sale, as in the original property. The portions of my children to be safely invested, and to stand subject to the limitations already provided in relation to their property."

The rights of the daughters of the first marriage are not involved in this litigation.

The testator's widow is dead, and all three of his daughters by her married. Euphan W., now Mrs. Washington, has children who, as well as her husband, are living; Mary M., now Mrs. Boyd, is a widow, with no child living, though children were born to her; and Ellen D., now Mrs. Goldsborough, had no children, but her husband is still living. The personal property given the children by the second marriage seems to have been destroyed or lost during the war between the States. The real estate devised them was partitioned between and is still held by them.

One of the limitations or conditions annexed to the estate given the daughters by the last marriage is as follows: "If either of my three children by the last marriage die under age, or single or childless, what I have given her in this will shall go in equal portions to her mother and sister of the whole blood, if her mother remains single, if not then entirely to the remaining sisters of the whole blood, and, this clause applies to the portion that either may receive from a deceased sister."

The contention of the appellees is (and that was the decision of the circuit court), that each of the daughters took a defeasible fee—a fee to be defeated if she died under age or single or childless. The appellants, on the other hand, insist that where the limitation is that the estate is to go over if the devisee fails to attain a certain age, marry or have issue, the uniform rule of construction is (unless the will manifests a different intent) that the word "or" must be read "and," and that all the contingencies must happen before the limitation over will take effect; and that upon the failure of either contingency to happen the contingent estate given the devisee vests or becomes absolute.

In order to give effect to the intention of a testator it is frequently necessary to read "or" as if it were "and," and *vice versa.* This is well settled. *Brewer* v. *Opie,* 1 Call. 212; *Chapman* v. *Chapman,* 90 Va. 409, 18 S. E. 913; *Crewe*

v. *Hatcher,* 91 Va. 378, 21 S. E. 811.    Not only is this true of wills, but also of deeds.    *Coleman* v. *Holladay,* 3 Munf. 510; Judge Allen's opinion in *Brooks* v. *Croxton,* 2 Gratt. 507.

In the case of *Brewer* v. *Opie, supra,* where the provision of the will in question was, "I give and bequeath unto my beloved son Joseph Lancaster my whole and sole estate both real and personal, and in case my said son should die before the age of twenty-one years or lawful heir, then in that event I give my said estate to be equally divided between the children of Joseph Blackwell and Lindsay Opie and their heirs forever."    The case was heard in 1788 upon an agreed state of facts which did not show that the testator was seized of the property in controversy; but President Pendleton, waiving that defect, said: "Supposing, however, what was probably the case, that the testator was seized and that the title depends upon his will, I have no difficulty at present in deciding that Joseph, the son, took a contingent fee, to become absolute upon either event happening— that is to say, his coming of age, or having a child born, or leaving one at his death; no matter which.    That 'or' in this will is to be taken copulatively, so as to require the happening of both contingencies to entitle those in remainder." There is nothing in the will passed upon in that case to show the intent of the testator, except the language quoted; yet the learned president of the court did not think it necessary to give any reason for so construing the will, doubtless because he regarded the construction to be given to such a limitation over, uncontrolled by other provisions in a will, as settled by an almost unbroken line of decisions of the English courts, from the reign of Queen Elizabeth down, holding that "or" must be construed conjunctively in such or like limitations over, where the will did not manifest a different intent.    But whatever may have been the cause of the court's not giving its reasons for its conclusion

in that case, its decision is in accord with the settled rule of construction in England, and in almost all, if not all, of the States of this country where the question has arisen.

A large number of cases, English and American, are cited by Mr. Freeman in his note to *Janney* v. *Sprigg* (7 Gill 197), 48 Am. Dec. 557, 566. The result of the learned annotator's consideration of these authorities is, that the rule laid down in the early case of *Soule* v. *Gerrard*, Cro. Elizabeth 525, s. c. sub-nom. *Sowell* v. *Garrett*, *Moore* 422, 590, where the testator devised to one of four sons, and his heirs forever, and if he died within age, or without issue, over to his three other children jointly; the devisee had issue, a daughter, and died within age, in which the court construed the word "or" to mean "and." "The rule as laid down in that case has been followed in every subsequent case with a similar limitation over down to the present time, that has not had something peculiar in its circumstances that prevented its application. Although the limitations over are not clothed in the same language, yet in every case where the gist of the limitation is that the estate is to go over if the devisee fails to attain a certain age or to have issue, the construction has been that the word 'or' must be read 'and,' and that both contingencies must happen before the limitation over will take effect; and that if either event happen—if the devisee either attains the age or has issue—the estate vests."

The reason why "or" is construed conjunctively and not disjunctively in such limitations over is clearly stated by Chief Justice Shaw in *Parker* v. *Parker,* 5 Metcalf (Mass.) 134, 136-7, where the devise was to the testator's five sons, with a limitation over in case any of them should die before they arrived at the age of twenty-one years or should die without any legal heir of his body. "The principle upon which this construction was originally adopted," he says, "was founded upon that great maxim, lying at the founda-

tion of all the rules for construing wills, that the intention of the testator, so far as it can be ascertained from the will, taking every clause and provision in it, and from the condition and circumstances of the estate, the relations of the testator and the various persons concerned, shall govern and be carried into effect so far as it can be consistently with the rules of law.   If the two facts of dying under age and dying without leaving issue were to be construed as two several and distinct contingencies, upon the happening of either of which the devise over should take effect, it would follow as a necessary consequence that if the devisee should marry and have issue and die under twenty-one, having such issue alive, the issue would not take the estate, because the dying under age is one of the events on the happening of which the estate would pass over to the devisee, and thus the issue of the first object of the testator's bounty would be wholly cut off from taking the estate. This is so manifestly contrary to the presumed intent of the testator that it cannot be adopted without adopting a construction which, adhering to the letter would violate the spirit of the will.  .  .  .   The manifest object of the testator was, we think, that if the son, who was the first object of his bounty, should die without leaving children to take after him, and whilst he was under age, so that he could not make any disposition of the property on account of the incapacity of non-age, then the testator intended to make the disposition of it himself.   But if the son should leave no children, but still if he should arrive at an age which the law would entitle him to dispose of the real estate by his own act, by deed or will, then it was intended that the gift to him should be absolute and the devise over would fail."

In the case of *Fairfield* v. *Morgan,* 5 Bos. & P. 38, where the devise was to B., but in the event B. should die before attaining the age of twenty-one, or without issue at his.

death, then to his mother, Chief Justice Mansfield, in delivering the opinion of the judges in the House of Lords, said: "The testator gave all his estate in the most general way to his brother Benjamin, by which he would take not a limited but the whole interest. But this would be an estate for life, if the word 'or' were to be construed disjunctively, and if it were to be so construed, this consequence would follow, that Benjamin could not have had the real use of the property, though the testator gave it to him; he could neither have sold nor mortgaged it, let his family have been ever so large, for unless he had issue living at the time of his death, the mother would be entitled, so that he would never have had absolute estate.

"Besides this, if a different event had happened from that which took place; if an event *vice versa* had happened, and Benjamin had had children and had died before attaining the age of twenty-one, those children could not have taken or been at all benefited by the estate, but it must have gone to the mother. The idea of a devisor giving an estate to a brother, to enjoy it during the life of the mother, who was likely to die before the son and to make a will to exclude the issue of his brother, is so absurd and improbable that it is next to impossible to impute such an intent to him."

See also Chief Justice Kent's opinion in *Jackson* v. *Blanshan*, 6 Johnson (N. Y.) 54, 5 Am. Dec. 188, where many English and American cases are reviewed; 2 Jarman on Wills (5th ed.) 81; *Hunt* v. *Hunt*, 53 Mass. 96; *Doebler's Appeal*, 64 Penn. St. 1, 14; *Shreeve* v. *McCrellish*, 60 N. J. Eq. 198, 46 Atl. 581.

In this case, if the word "or" be not construed "and," the consequences which might have resulted from such a construction would be even more absurd and less likely to have been intended by the testator than those pointed out by Lord Mansfield, for in this case there are three conditions

which must be satisfied before the estate could vest, whilst in that there were only two.

In this case, even though each of the three daughters should arrive at the age of twenty-one years, marry and have issue, her estate would not become absolute unless she had both a husband and child living at her death. If she was a widow at the time of her death, she would be "single" within the meaning of that word as used by the testator, for in the clause which creates the limitation over as well as elsewhere in the will he uses the word "single," not only in the sense of a person who has never been married, but as including one who is a widow. Although a daughter had a child or children who had died during their mother's lifetime leaving children, such issue could not take because the daughter died childless. *Vaughan* v. *Vaughan,* 97 Va. 322, 327-8, 33 S. E. 603. Again, if either daughter had died under age, leaving a child or children, such issue could not take because the mother died under age. If Mrs. Washington, who is now living, with husband and children, should die after her husband, her children could not take because she died single within the meaning of the will. If Mrs. Goldsborough should die after Mrs. Washington the latter's children could not take, because they are not sisters of Mrs. Goldsborough. If Mrs. Boyd should outlive her sisters, she would under the conditions stated above take all the land, and at her death no one would take it under the will, but as to it the testator would have died intestate. Again, if each daughter had married, had children and died under age or a widow, during their mother's widowhood the mother would have taken all the property absolutely, to the exclusion of the testator's grandchildren.

Of course the testator had a right to make a will where the estate given would not vest absolutely in the devisees unless they arrived at the age of twenty-one, and died with

a husband and child surviving, but the court will not construe a limitation over like the one under consideration as having that effect, unless it is manifest from the whole will that such was the intention of the testator.

In other provisions of the will the testator uses the word "or" manifestly in the sense of "and," or conjunctively. In providing for his wife he says, "I also direct that any investments made in her name *or* that shall hereafter be made or that shall appear to be intended for her by reason of any endorsement on the same or memorandum in writing shall be hers absolutely." Again, in providing how the ten thousand dollars given each of his infant daughters should be raised, he says: "Then raise the residue out of my personal estate not otherwise disposed of *or* the sales of any property directed to be sold." Again, in speaking of advancements, he says: "Whatever advances I have made *or* shall make either of my children will be charged to them at the end of this will from time to time."

It is apparent from the whole will that the testator intended, after providing liberally for his widow, to give each of his five daughters an equal share of his property, with the same rights therein substantially (except so far as affected by the limitation over now under consideration). The gift to each is in trust for their sole and separate use and benefit free from all marital rights of their husbands. "But whilst," he says, "I thus limit the devise to my daughters, my executors may intrust my daughters, whether married or single and of age, with the possession and use of their property, the reinvestments being subject to the same limitations."

From a careful consideration of the entire will, the court is of opinion that the word "or" in the limitation over was used in the sense of "and," or conjunctively, and should be so construed, and that each daughter of the testator by the second marriage took a contingent fee in the property

devised her, which became absolute upon her arriving at the age of twenty-one years.

We are of opinion, therefore, to reverse the decree and to remand the cause to the circuit court for further proceedings in accordance with the views expressed in this opinion.

*Reversed.*