## Wytheville.

### GEORGE GRAY, ET ALS., v. C. N. FRANCIS, ET ALS.

June 12, 1924.

Absent, Prentis, J.

1.  JUDGMENTS AND DECREES—*Power of Court to Set Aside Decree during Term—Decree Pro Confesso—Section 6333 of the Code of 1919—Case at Bar.*—In the instant case there was personal service of process upon defendants and the bill was duly taken for confessed as to them. However depositions were duly taken and filed together with certain exhibits. More than six months after the date of service of process on the defendants the cause was heard upon the bill taken for confessed and more than six weeks afterwards, but at the same term of court during which the decree was entered, defendants moved the court to set aside the decree for error apparent upon the record.

    *Held:* That under section 6333 of the Code of 1919, and notwithstanding section 6122 of the Code of 1919, the court had authority to set aside the decree for error apparent on the record.

2.  JUDGMENTS AND DECREES—*Setting Aside Decree Pro Confesso—Section 6333 of the Code of 1919.*—In the instant case a decree was on a bill taken for confessed as to the defendants. Under the provisions of section 6333 of the Code of 1919 the trial court had the power and authority given it, "on motion (to) reverse such * * * decree for any error for which an appellate court might reverse it, * * * and give such * * * decree as ought to be given," and would have had that power and authority, as is provided in such statute, even after the decree had become final by the adjournment of the court, provided the motion were made "within three years from the date of the * * * decree."

3.  BILL OF REVIEW—*Error Apparent on the Face of Record.*—On a bill of review filed within one year after a decree has become final, an appellate court might reverse such decree for error apparent on the face of the record.

4.  JUDGMENTS AND DECREES—*Setting Aside Decree during the Term at which Rendered.*—A motion to set aside a decree having been made before the trial court adjourned, the whole matter was within the breast of the court, and the court had plenary power, without the aid of any express statute on the subject, to have set aside the decree in ques-

tion and to have entered in its stead such decree as ought to have been entered.

5. JUDGMENTS AND DECREES—*Setting Aside Decree—Sections 6333 and 6122 of the Code of 1919—"Good Cause Shown."*—Section 6333 of the Code of 1919 authorizes the trial court to set aside a judgment or decree for any error for which an appellate court might reverse it and give such decree as ought to be given. Section 6122 of the Code of 1919 provides that a defendant in equity shall file his answer or other defense within six months from the date of service of process upon him, and that after the lapse of such six months no answer or other defense shall be received except for "good cause shown."

   *Held:* That where error of law is apparent on the record in the holding of any decree on a bill taken for confessed, such error is "good cause shown" within the meaning of section 6122 of the Code of 1919.

6. JUDGMENTS AND DECREES—*Setting Aside Decree—Sections 6333 and 6122 of the Code of 1919.*—Section 6122 of the Code of 1919 was not intended to affect the provision of law contained in section 6333 of the Code of 1919; both statutes are intended to operate in harmony.

7. EQUITY—*Time of Filing Answer or other Defense—Section 6122 of the Code of 1919.*—Section 6122 of the Code of 1919 providing that a defendant in equity shall file his answer or other defense within six months from service of process upon him is a wholesome one which should be firmly enforced. But the statute should be so enforced only in accordance with its true intent and meaning.

8. EQUITY—*Time of Filing Answer or other Defense—Section 6122 of the Code of 1919.*—The intendment of section 6122 of the Code of 1919 is directed chiefly against permitting a defendant, by filing his answer, or other defense, after the limit of time specified in the statute, to put the plaintiff to further proof than that already theretofore made, thus working a delay or continuance, because of matters not previously alleged and which are thereby, for the first time, sought to be put in issue; such intendment not being directed against error apparent on the face of the record already made.

9. WILLS—*Construction—"Or" not Read "And"—Case at Bar.*—A clause of a will was in the following language: "I desire if either or any of my sons shall die under age *or* without leaving lawful heir or heirs that his portion of land shall go to my other sons * * * ." (Italics supplied.)

   *Held:* That the word "or" would not be construed as meaning "and"; the word "or" not being used anywhere in the will with a meaning different from its ordinary sense and no circumstances here shown to indicate that it was used by the testator in any other sense than its ordinary meaning; and, that upon the death of one of the sons after becoming of age, intestate and without issue, his portion went to his brothers and their heirs.

10. WILLS—*Construction—Ordinary Sense of Words.*—The words used ·by a testator are to be understood in their ordinary sense unless a different meaning is indicated by the context, or by the circumstances of the case.

11. WILLS—*Construction—Technical Words.*—If technical words are used, that indicates a different meaning from their ordinary sense is to be given such words, unless the contrary appears on the face of the will.

12. WILLS—*Construction—Same Word Used in Different Parts of the Will.*— If a given word is used in one part of the will with a certain meaning, it will be presumed to be used in another part of the will with the same meaning.

13. WILLS—*Construction—Circumstances of the Case.*—The "circumstances of the case" as used in the rule that words are to be given their ordinary sense unless a different meaning is indicated by the "circumstances of the case," does not mean that the court can, from its consideration of the circumstances, supply an intention not expressed in the will; but merely that the words of the will are to be understood in the sense in which the circumstances of the case show they were intended to be used by the testator, although that meaning may be different from their ordinary meaning.

14. WILLS—*Construction—"Or" Read "And"—Case at Bar.*—The prevailing doctrine in England and in America is that the word "or" used in a gift over if the beneficiary should die under age "or" without leaving lawful heir, will be construed to have been used conjunctively— that is, with the meaning of "and"—so as to require the happening of both or all of the contingencies mentioned, in order to entitle those in remainder to take, provided there is nothing elsewhere in the will expressing a different intention of the testator. But in the instant case the will read as a whole, plainly expresses a different intention.

Appeal from a decree from the Circuit Court of Southampton county. Decree for complainants. Defendants appeal.

*Affirmed.*

This is a suit in chancery, instituted by the appellees, C. N. Francis and others (hereinafter called plaintiffs), against the appellants, George Gray and others (hereinafter called defendants), for partition of certain lands in the bill mentioned, which were devised by, and allotted in the division of land, under the will of Nathaniel

Francis, deceased (duly probated in 1849), to John W. Francis.

The said will, which is exhibited with the bill, is as follows:

"In the name of God, amen, I, Nathaniel Francis, of the county of Southampton and State of Virginia, being of sound mind and disposing memory though ill of body do make and constitute this my last will and testament, revoking all former ones of whatever date they may be.

"Item 1. I give and bequeath to my beloved wife during her lifetime my mansion house together with all the land lying west of the lane running from Peter Edwards line to Richd. Porters line, including the Porter tract of land; at her death I give the same to my son, William S. Francis, in fee simple forever, the remainder of my land I wish divided between my other three sons, Nathaniel T., John W. and Andrew J. Francis to be surveyed by Peter Edwards, Mark T. Peete, N. N. Thomas and Nathl. Simmons.

"Item 2. I desire that my wife shall select her third of my negro property of such as she may prefer so that she does not take more than one-third in value, the remaining two-thirds to be equally divided between all my children.

"Item 3. I give to my wife my buggy and harness, one horse cart, one ox cart and as much of the household and kitchen furniture as she may need in keeping house.

"Item 4. I wish the whole of my perishable estate sold and the money arising therefrom to be put in the common stock to be disposed of hereafter.

"Item 5. I desire that all my debts be paid and the remaining portion of my monied estate be divided between my seven children, giving to my son, Nathl. T. Francis, two hundred dollars more than William, and so

12

on down to the three youngest, which I wish to draw an equal portion.

"Item 6. I desire that Mrs. Luter be supported out of my estate if she should ever become destitute of the necessary means of support from other sources.

"Item 7. I desire if either or any of my sons shall die under age or without leaving lawful heir or heirs that his portion of land shall go to my other sons, and also if either one of my daughters shall die without leaving lawful heirs that her portion of property shall go to the surviving daughters.

"Item 8. I nominate and appoint my friends C. D. Barham and Thos. N. Newsom my whole and sole executors of this my last will and testament.

"Nathaniel Francis."

The bill shows that the lands of the testator were divided in accordance with item 1 of the will; that the land involved in this suit was duly allotted to the said John W. Francis; that he never married; that he conveyed away from time to time portions of the land in suit to defendants and others; that under such *mesne* conveyances the defendants claim certain portions of such land as set out in the bill; that John W. Francis died intestate on the 20th day of May, 1913, leaving no issue; that the plaintiffs were heirs-at-law of two of the other sons of the said testator mentioned in the will; that the land could not be conveniently divided in kind, etc.; that the interests of all parties would be promoted by a sale thereof for partition, etc.; and the theory of the bill, and the claim of the plaintiffs set up therein, is that John W. Francis having died without leaving lawful heir or heirs, the interests of the plaintiffs in the land in suit passed under item 7 of the will to the plaintiffs as the descendants of two and to the grantees of the third of the other three sons mentioned in the will.

There was personal service of process upon the defendants, who are the appellants in this cause, and the bill was duly taken for confessed as to them.   However, depositions were duly taken and filed, together with certain exhibits (doubtless because there was a non-resident and also unknown parties defendant other than appellants, who were proceeded against by order of publication, and because another defendant, other than appellants, appeared and answered), which evidence sustained the allegations of the bill with respect to the facts above stated as shown by the bill.

Thereupon, on the 26th day of May, 1922, more than six months after the date of the said service of process on the defendants who are appellants in this cause, the cause was heard upon the bill taken for confessed, as aforesaid, as to all of the appellant defendants, they having failed to appear, demur, plead or answer the bill, and decree was entered holding the facts to be as above stated; that the plaintiffs owned the interests in the land in suit as claimed in the bill; and the decree directed a sale of the land and the partition of the proceeds of sale among the persons entitled thereto, appointed special commissioners to make the sale, etc., etc.

On the 12th day of July, 1922, at the same term of court during which said decree of May 26th was entered, the court below entered an order from which the following appears, namely: That on the last named day the cause came on to be heard upon the motion of the appellant defendants, "moving the court to set aside and annul the decree entered on the 26th day of May, 1922  *  *  in this cause, upon the ground that said decree was erroneous upon the bill and evidence of the plaintiffs and the law as decided in the case of *Goldsborough* v. *Washington*, 112 Va. 104, 70 S. E. 525,"

whereupon the order proceeds as follows: "And it appearing to the court that this motion is made during the term at which said decree was entered, and it further appearing to the court that no answer or other pleading had been filed by any of the defendants at the time said decree was entered, and that more than six months when said decree was entered had elapsed since the date of the service of process upon said defendants, the court having heard the argument of counsel for the plaintiffs and defendants, doth refuse to set aside said decree and doth overrule said motion, and the court doth further refuse to allow any answer or demurrer to be filed, the court being of opinion that no good cause is shown why answer or demurrer was not filed and that it is without power to set aside said decree and to allow the filing of a demurrer or answer."

It is from this order, and from the decree of May 26, 1920, therein mentioned, that this appeal was allowed to the appellant defendants.

*Wm. Leigh Williams* and *Jas. H. Corbitt*, for the plaintiffs in error.

*E. R. F. Wells, Harry E. McCoy, W. S. Morris, Jr.*, and *Barron F. Black*, for the defendants in error.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

There are but two questions presented for decision, which will be disposed of in their order as stated below.

[1] 1. Was the court below, on July 12, 1920, without power or authority to allow the defendants to file their demurrer or answer setting up the single defense that the decree, of May 26, 1920, entered during the same term of the court, which was still in session on July 12,

1920, was erroneous because of error of law apparent on the face of the record; and without power or authority to reverse such decree for such error, if there was such error?

The question must be answered in the negative.

[2] The decree in question was a decree on a bill taken for confessed as to the defendants, who are the appellants in the cause. Under the provisions of section 6333 of the Code, the court had the power and authority given it, "on motion (to) reverse such * * decree for any error for which an appellate court might reverse it, * * * and give such decree as ought to have been given;" and would have had that power and authority, as is provided in such statute, even after the decree had become final by the adjournment of the court, provided the motion were made "within three years from the date of * * * the decree."

[3] It is, of course, well understood that, on a bill of review filed within one year after such decree had become final, had it become final, this court as an appellate court, might have reversed such decree for error apparent on the face of the record. See section 6316 of the Code.

[4] And, in the instant case, the motion having been made before the court adjourned, the whole matter was within the breast of the court, and the court had plenary power, without the aid of any express statute on the subject, to have set aside the decree in question and to have entered in its stead such decree as ought to have been entered.

[5, 6] The plaintiffs rely on the statute (section 6122 of the Code), as having taken from the court below the power or authority in question, and, as it would seem from the order of July 12th, under review, the learned

judge of that court was of opinion that such statute had that effect.   We do not think so.

The provisions of the statute last mentioned, so far as material to the question under consideration, are as follows:

"A defendant in equity upon whom process has been executed shall file his answer or other defense   *   *   * within six months from the date of such service, unless *   *   for good cause shown, the time be lessened by the court or additional time be given by the court, or the judge thereof in vacation, within which to file the same. After the lapse of such six months, or additional time, if any such be granted, no answer or other defense shall be received except for good cause shown   *   *."

We are of opinion that this statute was not intended to affect the provisions of law contained in section 6333 of the Code; that both statutes are intended to operate in harmony; and that when they are read and construed together, where error of law is apparent on the record in the holding of any decree on a bill taken for confessed as to the parties who make a motion to correct it, such error is "good cause shown," within the meaning of said section 6122 of Code, for which the court should, under the very provisions of such statute, receive the "answer or other defense" setting up such error of law.

[7, 8] The statute last mentioned is a wholesome one, which should be firmly enforced, and doubtless it was this consideration which led the learned trial judge to make the ruling he did.   But the statute should be so enforced only in accordance with its true intent and meaning.   And while we would not weaken, in the slightest degree, the vitality of the statute, we think that that meaning and intent is this:   That, after the six months mentioned in the statute, the defendants to a

suit in equity upon whom process has been served (as to whom the situation is that the bill has been taken for confessed), are to be held bound by their confession of the truth and accuracy of the allegations of the plaintiffs' bill, which the law imputes to them because of their silence, and which is involved as the result of the bill being taken for confessed, unless such defendants can purge themselves from the intendment thus imposed by law under such circumstances. The intendment is directed chiefly against permitting a defendant, by filing his answer, or other defense, after the limit of time specified in the statute, to put the plaintiff to further proof than that already theretofore made, thus working a delay or continuance, because of matters not previously alleged and which thereby, for the first time, sought to be put in issue; such intendment not being directed against error apparent on the face of the record already made.

The chief mischief which the statute seeks to remedy is the delay worked by dilatory tactics in pleading, where the pleading presents new matter not theretofore appearing on the face of the record, which might and should have been pleaded promptly at an earlier stage of the cause. The statute under consideration plainly means, we think, that "good cause" for the delay mentioned in the statute can be shown, where the pleading is of the character just mentioned, only "by showing fraud, accident, mistake, surprise, or some adventitious circumstance beyond his (the defendant's) control and free from his neglect," as is said in *Wilson* v. *Kennedy*, 63 W. Va. 1, 59 S. E. 736, in the construction of a West Virginia statute somewhat similar to that of Virginia under consideration.

The West Virginia case just cited is strongly relied on for the defendants. An examination of that case, how-

ever, shows that it was not a case of error apparent on
the face of the record, but of an answer sought to be
filed which denied the truth of the allegations of fact of
the bill and alleged new facts sought to be relied upon
by the defendant.

In that case, in addition to what is quoted therefrom
above, this is said, concerning the West Virginia stat-
ute: "This statute virtually means that the filing of an
answer in a chancery cause shall not work delay or con-
tinuance unless defendant shows   *   *   good cause to
excuse the tardiness of his answer.   Its apparent ob-
ject is to prevent delay or dilatory action in the course
of chancery proceeding, at the same time giving the
right to defendant to be heard   *   *   provided his an-
swer does not delay the progress of the suit.   *   *   The
defendant was not only asking that the   *   *   decree
of the court be set aside, but that he be permitted to file
his answer, *putting the plaintiff to proof, and working a
delay or continuance.*"   (Italics supplied.)

In the instant case, the defense sought to be made by
the demurrer, or answer, not allowed to be filed, did not
deny any of the allegations of fact of the bill—did not
seek to put the plaintiffs to any proof, or work any de-
lay or continuance—but took the position that, ad-
mitting all of the allegations of fact of the bill and all of
the facts shown by the evidence introduced in the cause
to be true, still, that it was apparent on the face of the
record that the decree complained of was wrong, as a
matter of law.

[9] We come now to the consideration of the remain-
ing question presented for our decision, namely:

2.  Does item 7 of the will involved in this suit, in lan-
guage now to be quoted, mean what it says, or is the
word "*or*" (which we italicize) to be interpreted as
meaning *and?*

The language referred to is as follows: "I desire if either or any of my sons shall die under age *or* without leaving lawful heir or heirs that his portion of land shall go to my other sons   *   *."

The first branch of the question must be answered in the affirmative; the second in the negative.

The aforesaid decree of the court below, of May 26, 1920, reached the same conclusion as that just stated and held that John W. Francis having died, on May 20, 1913, intestate and without issue, the land involved in this suit, which had been allotted to him under the will above mentioned, passed, in accordance with the provisions of item 7 of the will, at the death of John W. Francis, to the other sons of the testator mentioned in the will and their heirs, and was owned at the time of the decree in fee simple by the plaintiffs and other persons, in undivided interests, as alleged in the bill. We think that this holding was correct.

[10-13] There is nothing more firmly settled with respect to the construction of wills by courts than the general rule, which, in 28 R. C. L., sec. 184, p. 23, is thus stated: "The words used by the testator are to be understood in their ordinary sense unless a different meaning is indicated by the context, or by the circumstances of the case." If technical words are used, that indicates that a different meaning from their ordinary sense is to be given such words, unless the contrary appears on the face of the will. And if a given word is used in one part of the will with a certain meaning, it will be presumed to be used in another part of the will with the same meaning. And, further, by the reference in the quotation just made to "the circumstances of the case," it is not meant that the court can, from its consideration of the circumstances, supply an intention not expressed in the will; but merely that the words of the will are to be un-

derstood in the sense in which the circumstances of the case show they were intended to be used by the testator, although that meaning may be different from their ordinary meaning.    28 R. C. L., sec. 185, p. 223, sec. 183, p. 222, sec. 174, pp. 214-215; *Hurt* v. *Hurt,* 121 Va. 413, 93 S. E. 672; *Moon* v. *Stone,* 19 Gratt. (60 Va.) 130, 327-8.

The construction adopted by the learned judge of the court below, and which we have adopted, of the will under consideration gives, under the circumstances, the legal significance to the technical words "heir or heirs" used; and gives to the word "or" its ordinary sense or meaning.    The word "or" is not anywhere used in the will with a meaning different from its ordinary sense. And there are no circumstances shown in evidence which indicate that the word "or" was intended to be used by the testator in any other sense than its ordinary meaning.

Moreover, taking the will by its four corners—reading it as a whole—we find the general intention of the testator clearly expressed in item 7, the concluding devisory clause of the will, to impose the limitation upon the estate of all of his children in all of the property, personal as well as real, devised and bequeathed to them, respectively, that all of the respective estates should cease and determine upon the happening of the event of any of them, respectively, dying without issue at any age, whether under or over the age of twenty-one years, and to provide for the limitation over, in that event, of the respective estates to others, namely, the estates in the real estate to the other sons, and the estates or interests in the personal estate to the other daughters.    This intention being clearly expressed, the court is powerless to do otherwise than to carry it into effect, unless the contrary intention is found to be else-

where expressed in the will.    The contrary is nowhere else expressed in the will.

[14] Now it is true, as pointed out in the opinion delivered by Judge Buchanan, in *Goldsborough* v. *Washington*, 112 Va. 104, 70 S. E. 525, that the prevailing doctrine in England and in America is that where the word "or" is so used in a will, it will be construed to have been used conjunctively, that is, with the meaning of "and," so as to require the happening of both, or all, of the contingencies mentioned in order to entitle those in remainder to take, *provided there is nothing elsewhere in the will expressing a different intention of the testator.* (See the cases cited and quotations made in *Goldsborough* v. *Washington* on the subject.)

The instant case, however, as aforesaid, is not a case in which there is nothing elsewhere in the will expressing a different intention from that just mentioned.   The will, when the item 7 is read as a whole, and along with the whole will, plainly expresses a different intention, as we have seen, as above set out.    Therefore, the aforesaid doctrine referred to in *Goldsborough* v. *Washington,* has no application to the instant case.

And, so far as *Goldsborough* v. *Washington* is concerned, while the doctrine just mentioned is therein referred to with approval, the facts of the case were such that the application of that doctrine was not necessary for that decision; and, indeed, an examination of the opinion therein discloses that the decision rests upon application of a wholly different doctrine, namely, the application of the well settled rule, above referred to, that where a given word is used in one part of the will with a certain meaning, it will be presumed to be used in another part of the will with the same meaning; and the application of the further well settled rule that the

intention of the testator as expressed in the will, when read as a whole, must govern.

As said in the opinion in *Goldsborough* v. *Washington*, (112 Va., at p. 115, 70 S. E. 528): "In other provisions of the will the testator uses the word 'or' manifestly in the sense of 'and,' or conjunctively." The opinion thereupon refers to and quotes from three such instances in the will. The opinion further refers to and quotes from other provisions of the will showing the intention of the testator found expressed in the will as a whole, and, in the concluding paragraph, adds this: "From a careful consideration of the entire will, the court is of opinion that the word 'or' in the limitation over was used in the sense of 'and,' or conjunctively, and should be so construed.   *   *."

Hence, we are of opinion that there was no error in the decree of May 26, 1922, under review, apparent on the face of the record, and the same will be affirmed.

*Affirmed.*