# Richmond

## LOTTIE M. ROSENBERGER v. LOTTIE M. ROSENBERGER, ET AL., EXECUTORS, ETC.

### AND

## DOROTHY M. BROCK v. LOTTIE M. ROSENBERGER, ET AL., EXECUTORS, ETC.

March 4, 1946.

Records Nos. 2999, 3000.

Present, All the Justices.

1026

The opinion states the case.

*Frank L. Ball,* for Lottie M. Rosenberger.

*Lawrence W. Douglas,* for Dorothy M. Brock.

*Frank Stetson, Wilson F. Farr* and *Hardee Chambliss, Jr.,* for The Washington City Orphan Asylum.

SPRATLEY, J., delivered the opinion of the court.

This cause was instituted by Lottie M. Rosenberger and the Lincoln National Bank of Washington, executors of the

estate of Raphael A. Casilear, deceased, and the Lincoln National Bank of Washington, trustee under the will of Raphael A. Casilear, deceased, against Viola Atlee Marston, infant, Dorothy M. Brock, Washington City Orphan Asylum, a corporation, and Lottie M. Rosenberger, in her own right, for the purpose of having the court construe certain provisions of the will and codicil of Raphael A. Casilear and determine certain questions relative to the distribution of decedent's property. Answers were duly filed on behalf of each of the defendants.

Raphael A. Casilear, a resident of Fairfax county, Virginia, died testate on November 17, 1940. On September 22, 1941, his will, dated October 5, 1932, with a codicil thereto dated May 5, 1936, was admitted to probate, and Lottie M. Rosenberger and the Lincoln National Bank of Washington, the executors nominated therein, qualified as such on the same day, and immediately entered upon the performance of their duties.

So much of the will of Casilear as is pertinent to the proceedings under review is as follows:

First, he directed the payment of his just debts and funeral expenses, expressly authorizing the application of the proceeds of a life insurance policy in the sum of $2,000 towards the part payment thereof;

Secondly, he gave and bequeathed all moneys on deposit in any bank or trust company to his credit at the time of his death to Mrs. Rosenberger.

The next three paragraphs read as follows:

"THIRD: My farm, known as the Brook Farm, containing about Sixty (60) acres of land together with all the improvements and appurtenances thereunto belonging and all the farm implements, stock and equipment used in connection therewith, being the farm * * * , I give and devise to the said Lottie M. Rosenberger, who is my housekeeper and resides on said farm, for and during the term of her life, and after her death to Dorothy Marie Marston, also now residing on said farm, for the remainder of her life and after her death to her half sister, Viola Atlee Marston, also

now residing on said farm, for the remainder of her life. Upon and after the deaths of all three of said life tenants, I give and devise the same to the Washington City Orphan Asylum, hereinafter mentioned, in fee simple for its proper charitable uses and purposes, or if at that time it shall not be in existence, or be unable to accept this devise, then and in such case I give and devise the same to such charitable institution as my Trustee shall select in its place, as hereinafter provided for.

"Fourth: All the rest of my personal property (with the exception of stocks, bonds, mortgages and other securities) including particularly all household furniture and effects, all automobiles, motor trucks, carriages, wagons, and horses and other live stock, I give and bequeath absolutely to said Lottie M. Rosenberger, if she survive me.

"Fifth: All shares of stock and bonds, mortgages and other securities of every kind which I shall own or be entitled to at the time of my death, and all real estate other than the Brook Farm, aforesaid, now belonging to me, and all real estate which I may hereafter acquire and own at the time of my death, I give and devise to The Lincoln National Bank of Washington, a corporation having its offices in the District of Columbia, absolutely as to all stocks and bonds and in fee simple as to real estate, in and upon the following trusts, that is to say:—

"In Trust, to take charge of, manage and control the same, collect and receive all of the rents, issues, profits and income thereof, and to pay and discharge therefrom all necessary costs and expenses, in connection with the execution of the trust, and insurance against fire and the preservation and upkeep of the buildings and improvements upon the real estate included in the trust estate, and all lawful taxes and assessments, when and as the same shall become due and payable upon the property of the trust estate, both real and personal, and to deduct and retain annually, for its own use and benefit, a commission of five per centum (5%) upon the gross income of the trust estate, real and personal, which shall come into its possession and control, for its services as

trustee, with respect to the collection and disbursement of said income and incidental services, and to pay all the balance of the net income of the trust estate, real and personal, unto the aforesaid Mrs. Lottie M. Rosenberger, said net income to be paid to her in instalments, at quarterly or other convenient intervals, for her own use and benefit, for and during the term of her natural life, and from and after her death, to pay the same in instalments, at convenient intervals, as aforesaid, unto Dorothy Marie Marston, for the remainder of her life, less however, the sum of One Hundred Dollars ($100.00) per month, during the remainder of her life, which I direct the Trustee to pay, or apply to the benefit of her half sister, Viola Atlee Marston, upon the death of said Dorothy Marie Marston, if the said Viola Atlee Marston shall have survived her, then and thereafter to pay the said net income in instalments at convenient intervals, as aforesaid, unto the said Viola Atlee Marston, for the remainder of her life. From and after her death, if she shall survive the said Dorothy Marie Marston, otherwise, from and after the death of the said Dorothy Marie Marston, (the said Mrs. Lottie M. Rosenberger being also then dead), the trust shall cease, and the aforesaid Bank as Trustee, or its successor, if any, shall promptly pay over, transfer, convey and deliver the net corpus of the said trust estate, real and personal unto The Washington City Orphan Asylum, a corporation, now owning and operating the Hillcrest Home for children in the District of Columbia, absolutely, as to the personal property, and in fee simple as to the real estate, free, clear and discharged of all trust hereby created. If, however, it should happen that at the death of the last survivor of said Lottie M. Rosenberger, Dorothy Marie Marston and Viola Atlee Marston, the above-named charitable institution shall be no longer in existence, or for any reason be incapable in law of receiving and utilizing the said devise and bequest, then and in either of said events, I hereby authorize, empower and direct my said trustee, or its successor in trust, if any, to promptly select in its place and stead some other orphan asylum or institution for the

care of orphan, minor children, and to pay over, convey, transfer and deliver the net corpus or principal of the trust estate to said selected institution, for its proper uses and purposes, and by its proper corporate name, in fee simple, as to the real estate, and absolutely as to the personal estate or property, and free of all trust hereby created. It is my will and I hereby direct, that in case the said Dorothy Marie Marston, and Viola Atlee Marston, should die before the said Lottie M. Rosenberger, that then and in that event, the trust hereinbefore created shall cease at her death, and the principal of the trust estate be paid over, transferred, conveyed and delivered, as hereinbefore directed to be done upon the death of the above-mentioned Viola Atlee Marston. * * * "

The next provision specifically granted the Lincoln National Bank of Washington full power and authority to carry out the intent and purpose of the above trust and to make final settlement.

The codicil is in the following language:

"I hereby amend Paragraph 3, page 2, of said will to read as follows:

"THIRD: I give and devise to the said Lottie M. Rosenberger, who is my housekeeper and resides on said farm for and during the term of her life and after her death Violet Marston, also residing on said farm for the remainder of her life, my farm, known as the Brook Farm, containing about sixty (60) acres of land together with all the improvements and appurtenances thereunto belonging and all the farm implements, stock and equipment used in connection therewith, being the farm where I reside on the Annandale Road in Fairfax County, Virginia, adjoining the old Slade farm, which Brook Farm was acquired by me in part from one Anderson, and the rest from the estate of my brother, the late William B. Casilear; and to her half-sister, Dorothy Marie Marston, I give and direct to be paid to her by my said executors, the sum of Fifty-five ($55.00) Dollars per month for the remainder of her life.

"Upon and after the deaths of the two said life tenants,

I give and devise the same to the Washington City Orphan Asylum, hereinafter mentioned, in fee simple for its proper charitable uses and purposes, or if at that time it shall not be in existence, or be unable to accept this devise, then and in such case I give and devise the same to such charitable institution as my Trustee shall select in its place, as hereinafter provided for.

"THE REMAINDER of said will shall continue in full force and effect as though no change therein has been made and this codicil shall be construed as an amendment to said paragraph 3, page 2, of said will only."

Thus, it will be seen that the testator disposed of his entire estate in four separate items. He died intestate as to no part thereof.

Casilear owned, at the time of his death, a large number of dividend-paying stocks. The executors collected the sum of $3,547.50 in dividends, which had accrued on these stocks between the death of the testator and their qualification on September 22, 1941. Within the next six months after their qualification, they further collected dividends in the sum of $2,186.50, accrued during that period. The debts, taxes and cost of administration of the estate amounted to $16,369.76. To make payment of this amount, it was necessary to sell some of the shares of stock, which had been put up as collateral security for debts of the testator. Accordingly certain of the stock was sold for the sum of $15,683.54, upon which particular stock the executors had received $1710, as dividends accruing during the first six months of their administration, which dividends are included in those above stated.

The executors filed a statement with their bill showing that they had paid out of income directed to or for the benefit of Mrs. Rosenberger $3,037.99, and held for future accounting securities of the total value of $59,245.77, including dividends received as income in the sum of $5,130.33. None of the property mentioned in paragraphs two, three and four of the will came into their hands. Mrs. Rosenberger apparently took it into her possession.

The executors alleged in their bill that they were in doubt as to the rights of the defendants in and to the estate created in paragraph five of the will; that they were unable to determine whether the sum of $55 per month, directed to be paid to Dorothy Brock, nee Marston, in the codicil, was payable immediately after the testator's death, was a charge upon the entire estate, was payable prior to the income directed to be paid Mrs. Rosenberger, and whether the payment was to be made by them as executors or by the trustee named in the will, or both, and whether the sum of $100 per month, directed to be paid to Viola Marston in paragraph five of the will, was payable out of income or principal, or whether the right to such payment was in any wise affected by the provisions of the codicil.

All of the legatees and devisees were strangers in blood to the testator.

At the date of the execution of the will in 1932, Dorothy Marston, now Dorothy M. Brock, the niece of Mrs. Rosenberger, was twelve years old. Viola Marston, another niece, half-sister of Dorothy, was two years old. Both were living with their aunt at the home of Casilear on the Brook Farm. The uncontradicted evidence shows that Dorothy, between 1932, the date of the will, and 1936, the date of the codicil, did not get along peaceably and quietly with the other persons in the household, including Casilear. She became so intractable that the testator sent her away from his home four times, and she finally went to live with her father in the latter's home.

Mrs. Rosenberger claimed that the corpus of the trust fund included all of the securities which Casilear owned at the time of his death, and that she was entitled to all of the income therefrom from the date of his death, including the income on the securities sold by the executors to pay debts, taxes and expenses of administration, without deduction except for taxes and costs of administration. Her contention relates only to the provisions of paragraph five of the will. No point is made of the delay in the qualification of the executor and executrix, nor any reason given why Mrs.

Rosenberger, who was a legatee as well as co-executrix, did not earlier qualify as such executrix.

Dorothy Brock, who was *sui juris* at the date of the trial, in her answer asserted the following claim:

"By virtue of the provisions of the codicil, your respondent contends that she is entitled to receive from 'said executors' (meaning trustee) the sum of Fifty-five Dollars ($55.00) per month from the date of testator's death, for the remainder of her life. This sum, she alleges, the testator intended her to have, in lieu of the substantial estate which had been given to her under the original will, but which was taken from her and given to her half sister, Viola, by the codicil. She alleges that this sum should. be a preferred charge against the corpus of the estate."

The case was heard on the pleadings and upon the evidence of Mrs. Rosenberger which was confined to the personal relations between Dorothy Brock, members of the family, and the testator.

The trial court held, first, that the corpus of the trust fund, created under paragraph five of the will, included all shares of stock, bonds, mortgages, and securities of every kind, which the testator owned at his death and all increment and income thereon accrued and paid for a period of six months from the date of the qualification of his executor and testatrix, that is, the period of six months from September 22, 1941, together with all of the real estate of the testator, except the Brook Farm mentioned in paragraph three, and the proceeds realized from the sale thereof, and all sums received by the executors as income on securities sold to pay debts, taxes and expenses of administration, which corpus of said fund, as stated in the report of the executors, was to be. delivered to the named trustee, and that the said trustee, after paying the costs of this suit, counsel fees allowed, and all estate taxes and unpaid debts of the testator from such corpus, the balance remaining should constitute the net corpus of the trust fund to be administered in accordance with the direction of the testator; that during the lifetime of Mrs. Rosenberger neither Dorothy Brock

nor Viola Marston should be entitled to receive any payment
from such trust fund; that during the lifetime of Mrs.
Rosenberger the trustee should pay to her the entire income
on the net corpus of the trust fund, less all taxes on such
corpus and the income therefrom, and a 5% commission
on the gross income to the trustee; and, second, that upon
the death of Mrs. Rosenberger, in the event that Viola
Marston and Dorothy Brock were then both living, the trus-
tee should pay out of the net income from the trust fund,
first, the sum of $55 per month to Dorothy Brock; second,
$100 per month to Viola Marston; and then the balance of
such net income, if any, to Dorothy Brock for and during
the remainder of their joint lives, and thereafter the entire
net income thereon to the survivor of them for and during
the remainder of her lifetime.

Upon the question whether the entire income, after the
death of the testator and during the six months period imme-
diately after the qualification of his personal representatives,
on the securities mentioned in the trust clause should be
treated as income for distribution to the life tenant or be
added to the corpus of the trust fund there are two lines of
authority; one known as the English Rule and one known
as the Massachusetts Rule.

▐▪▌ Under the common law or English rule, general
legacies, where the will itself fixes no specific time for their
payment, are payable at the end of one year from the
death of the testator, and income upon testator's property,
earned during the course of administration, used to pay debts
and costs of administration, is added to the residuary trust
as part of the corpus.

Under the Massachusetts Rule, unless otherwise directed
in the will, a life tenant is held entitled to the income from
a residuary trust from the time of the testator's death,
including the earnings upon testator's property used to pay
testator's debts and costs of administration.

The subject is fully discussed and the cases reviewed in
*Old Colony Trust Co.* v. *Smith*, 266 Mass. 500, 165 N. E.
657, and the Massachusetts Rule therein followed has been

adopted in the States of Rhode Island, New York, Ohio, Wisconsin and North Carolina. *City Bank Farmers' Trust Co.* v. *Taylor*, 53 R. I. 126, 163 A. 734; *In re Stanfield*, 135 N. Y. 292, 31 N. E. 1013; *Davidson* v. *Miners', etc., Trust Co.*, 129 Ohio St. 418, 195 N. E. 845, 98 A. L. R. 1318; *In re Leitsch's Will*, 185 Wis. 257, 201 N. W. 284, 37 A. L. R. 547; *Wachovia Bank, etc., Co.* v. *Jones*, 210 N. C. 339, 186 S. E. 335, 105 A. L. R. 1189.

In the State of New York, the English Rule has been changed by statute. (N. Y. Laws 1931, c. 706, added section 17-b to the Personal Property Law (Consol. Laws, c. 41) ).

In North Carolina, the rule was added by a divided court.

It does not appear from the decisions above that there were involved any statutes similar to those in Virginia.

The English Rule has been followed in Maryland, Connecticut, Kentucky, New Hampshire, Delaware, New Jersey and the District of Columbia.

*York* v. *Maryland Trust Co.*, 150 Md. 354, 133 A. 128, 46 A. L. R. 231; *Bridgeport Trust Co.* v. *Fowler*, 102 Conn. 318, 128 A. 719; *Grainger* v. *Pennebaker*, 247 Ky. 324, 56 S. W. (2d) 1007; *Bradford* v. *Fidelity Trust Co.*, 12 Del. Ch. 56, 104 A. 777; *White* v. *Chaplin*, 84 N. H. 208, 148 A. 21; *Trust Co.* v. *Glunz*, 121 N. J. Eq. 593. 191 A. 795; *Proctor* v. *American Security, etc., Co.*, 98 F. (2d) 599.

The question is not an open one in Virginia. In our decisions we have followed the English Rule and pertinent Virginia statutes in accord therewith.

█ The common law fixed the time of the payment of a legacy at one year after the testator's death, when the time for its payment was not fixed by will. The common law continues in full force in Virginia, except where it has been altered by the General Assembly. Virginia Code, 1942 (Michie), section 2.

By Virginia Code, 1942 (Michie), section 5437, it is provided:

"A personal representative shall not be compelled to pay any legacy given by the will, or make distribution of the

estate of his decedent, until after six months from the date
of the order conferring authority on the first executor or
administrator of such decedent, * * * .  (Code 1887, section
2706; 1930, p. 631.)"

Prior to 1930, the time limit in which distribution could
not be compelled was one year.  Virginia Code, 1904 (Pol-
lard), section 2706.

In *Domestic, etc., Missionary Soc.* v. *Crippled Children's
Hospital*, 163 Va. 114, 176 S. E. 193, this is said:

"In the case of *Armentrout* v. *Armentrout*, 112 Va. 660,
72 S. E. 721, it is held: 'When legacies are payable by the
executors out of the estate of the decedent in his hands to
be administered, the general rule is that they are payable at
the end of the year from the death of the testator, with
interest from that date, unless some other time is fixed by
the will when interest is to begin.'

"And in *Denny* v. *Searles*, 150 Va. 701, 143 S. E. 484,
493, where it was argued that the rule about interest is dif-
ferent in Virginia from other States, this court said: 'This
position is incorrect.  The rule that a legacy bears interest
from the end of the year after the death of the testator is a
general rule (subject to exceptions) established by the Chan-
cellors of England and adopted by all the States so far as we
have been able to discover.  In Virginia, however, by
statute, interest begins to run from the end of the year after
the qualification of the personal representative.'  And this is
true although the fund out of which the legacy is payable is
wholly unproductive, or where the delay in the payment of
the legacy, due to the fact that the validity of the will was
in litigation, or the legatee himself interposed obstacles, or
assets sufficient were not then available.  Schouler on Wills,
Executors and Administrators, Vol. 4, p. 225; 40 Cyc.,
pp. 2103-2104."

In *Denny* v. *Searles*, 150 Va. 701, 143 S. E. 484, it was
held that the peculiar facts of that case relating to the com-
plexity of the administration of the estate exempted it from
the general rule that legacies bear interest after the end of

one year from the qualification of the personal representative. No such peculiar facts appear in the present case.

In *Moorman* v. *Crockett*, 90 Va. 185, 17 S. E. 875, Judge Lacy, in discussing whether a legacy bore interest from the date of the testator's death, said:

"It is the rule in this State that the legacy bears interest at the end of one year. It is not payable sooner under our law. Section 2706 of the Code of Virginia. The general rule is varied, if there be a future day named for the payment of the legacy, or some other period be fixed by the will when the interest is to begin. In this case there is nothing to take this legacy out of the general rule and place it under any exception. The will is silent as to these questions. It is a general legacy payable in no special manner. And there is nothing in the relation of the parties to change it. The legatee, an infant, lived in the home of her parents, and was amply provided for in other respects, and the testator did not stand in *loco parentis* as to her. *Morrison* v. *Dowell*, 82 Va. 591 [?]; *McCormick* v. *Wright*, 79 Va. 524; 2 Rob. (Old) Pr. 106; *Anderson* v. *Burwell*, 6 Gratt. (47 Va.) 405; *Shobe* v. *Carr*, 3 Munf. (17 Va.) 10; *Lupton* v. *Lupton*, 2 John. Ch. 614; 2d Lomax on Executors, 271."

The trust fund could not be established and set up until the debts of the testator and proper charges against his estate had been ascertained and deducted, that is, until the residue or net corpus of the trust fund had been set up.

The question whether income received by the executors during the period of administration from property subsequently used in paying debts and expenses of administration should be paid to the beneficiary entitled to the income or transferred to the corpus of the trust was directly involved in *Proctor* v. *American Security, etc., Co., supra*, where the English and Massachusetts Rules were compared and numerous cases reviewed. The court there followed the English Rule as expressed in Restatement of the Law of Trusts, *infra*. This case contains an excellent discussion of the meaning and definition of the words "rest, residue and remainder," as applied to estates in wills and points out that

the several constructions placed thereon differentiate the decisions in most of the cases.

In Restatement of the Law of Trusts, section 234 (g), this is said:

"Income on Property Used in Paying Legacies, Debts and Expenses: To the extent to which the income received by the executors during the period of administration is derived from property which is subsequently used in paying legacies and discharging debts and expenses of administration, and has not been applied to the payment of interest in such legacies, debts and expenses, the trustee is entitled to receive the same, but it should be added. to the principal and not paid to the beneficiary entitled to the income."

The contention of Mrs. Rosenberger will be first considered.

Casilear was heavily indebted at the time of his death. The payment of his debts and the cost of administration of his estate were not by his will charged upon any specific property except the proceeds of the $2,000 life insurance policy, which was far from sufficient to cover the costs. Admittedly, the trust fund could not be ascertained and established until the estate was administered, and all debts, taxes and expenses of administration paid. Title to the personal assets of the testator became vested in his personal representatives just as it was vested in the decedent. It was their duty to take prompt possession thereof, to liquidate the estate, to pay all debts and costs of administration, and then make disposition of the remaining estate, as directed by the will. The residue constituted the net corpus of the trust fund.

Within the period between the date of testator's death and the probate of his will, Mrs. Rosenberger occupied the Brook Farm, with all of its furnishings, implements, and live-stock. She had likewise taken possession of all the tangible personal property, including all moneys in the bank, which had been specifically bequeathed to her.

The executors, in administering the estate, were thus compelled to turn to the securities described in paragraph five of

the will as the only fund for the payment of the debts of the testator, taxes and costs of administration. The balance remaining after such payment constituted the corpus of the trust fund. This fund was necessarily subject to the necessary costs of its administration and taxes, leaving the balance as a net corpus for administration by the trustee.

While it is competent for a testator to fix, by will, the time for payment or delivery of legacies therein provided for, a close study of the will under review fails to show any intention, either express or implied, that Mrs. Rosenberger should receive all income from the date of his death. He made ample provision for her pending the administration of his estate. In addition to the life estate created in trust for her, he bequeathed to her all of his moneys on deposit to his credit and certain of his tangible personal property, including all of his household furniture. He provided her with a home for her life on Brook Farm, with the use of all the farming implements, livestock, etc., thereon. He appointed her co-executrix of his will, entitling her to an allowance of reasonable compensation for her duties.

There is nothing in the will to indicate that Casilear intended to give Mrs. Rosenberger a larger income than would be received by the succeeding life tenant, or that the corpus alone of the trust fund should be charged with the payment of his debts and costs of administration, and to that extent be decreased at the expense of the succeeding life tenant and remaindermen. On the other hand, he seems to have carefully provided for the needs of minor and orphan children, as far as possible, out of the assets of his estate. He could hardly have intended to give Mrs. Rosenberger income on something which never became a part of the corpus of the trust fund.

All things considered, we are of opinion that as a matter of fair division between the life tenants and the remaindermen, the English Rule is the better rule.

On the part of Dorothy Brock, the trial court had for consideration only the claim asserted in her answer, that is, that under the codicil to the will she was entitled to receive

from "said executors" (meaning trustee) the sum of $55 per month from the date of testator's death for the remainder of her life, which "the testator intended her to have in lieu of the substantial estate which had been given to her under the original will, but which was taken from her and given to her half-sister, Viola," and "that this sum should be a preferred claim against the corpus of the estate."

In this court she further contends that the monthly payments of $55 bear interest from their respective accrual dates until paid, and constitute a cumulative legacy. These latter contentions will be considered only as they relate to the case made out in the trial court. She cannot approbate and reprobate.

Dorothy Brock has attempted to perfect her appeal by filing a separate petition without a transcript of the record. Her appeal is from the same decree from which Mrs. Rosenberger obtained her writ. She suggests that the record is already before us in Mrs. Rosenberger's petition. Her procedure is contrary to the mandatory provisions of Virginia Code, 1942 (Michie), section 6339. However, since it is apparent that her rights come within the purview of Rule of Court XV, we will consider the whole record as before us, and correct any error which may be perceived against her as an appellee as if she had properly brought the case before us.

We agree with counsel for Dorothy Brock that the questions raised by her contentions are difficult, and that we must ascertain the intention of the testator, and reconcile, as far as possible, the conflicting provisions of the will and the codicil.

The original will was a long and carefully prepared paper, evidently drawn by a skilled legal scrivener, disposing of the testator's entire estate clearly and with great particularity, while the codicil was obviously drawn by the testator or some person unskilled in the preparation of such a document.

Under paragraph three of the will, Brook Farm was left to Mrs. Rosenberger during her life. In the original will Dorothy Brock was not given any interest in any property

of the testator until after the death of Mrs. Rosenberger. In lieu of the estate which had been given to her under paragraph three in the original will, but which was taken from her and given to her half-sister, Viola, in the codicil, there was given to her in the codicil "$55 per month for the remainder of her life," a general bequest not specifically charged against any particular estate of the testator nor preferred over specific bequests and devises.

The codicil was expressly substituted for the third paragraph of the original will. It contains no clause revoking any other paragraph of the will. On the other hand, it expressly states that all other provisions of the original will "shall continue in full force and effect as though no change therein had been made."

It may be assumed that no testator intends to make conflicting provisions in his last will and testament. Notwithstanding the declaration of the testator that the codicil should have no effect on the previous provisions of his original will, save paragraph three, and the foregoing assumption, the provision in the codicil for Dorothy, if effective, is in conflict with other provisions of the will. Whatever payment be made to Dorothy must come from the estate of the testator. If the provisions of the original will are to be carried out, as directed, there will be no part of testator's estate out of which $55 per month can be paid to her, at any time, either as a legacy or as an annuity. Whether or not the provision in the codicil for Dorothy was provoked because of exasperation over her conduct, it is clear that the testator, in his codicil, intended her to share in his estate.

The provision in the codicil cannot be given effect if the original will is to remain unaffected. Notwithstanding the conflict, it is our duty to give it effect consonant with the ascertained intention of the testator, as expressed in his whole testament, and to the extent that there is a conflict, the provision in the codicil as his last expressed wish must prevail. *Dawson* v. *Dawson*, 10 Leigh (37 Va.) 602; *Hooe* v. *Hooe*, 13 Gratt. (54 Va.) 245; *Gordon* v. *Whit-*

*lock,* 92 Va. 723, 24 S. E. 342; *Miller* v. *Buchanan,* 114 Va. 76, 75 S. E. 773.

In *Simmons* v. *Gunn,* 156 Va. 305, 157 S. E. 573; we quoted with approval the following statement from 1 Schouler on Wills, section 487:

"A codicil is a part of a will, but with the peculiar function annexed of expressing the testator's afterthought or amended intention. The codicil should be construed with the will itself; and from its very nature it may as a context confirm, alter, or altogether revoke an intention expressed in the body of the instrument to which it is annexed."

It seems to be clear from the will and codicil read as a whole that it was the broad general purpose of the testator to give to Dorothy and Viola only life estates in specific property to take effect upon the death of Mrs. Rosenberger, with the remainder thereafter vesting absolutely and in fee in the Washington City Orphan Asylum or its successor selected as directed. The words "for the remainder of her life," in the codicil must be read in connection with the major provisions in the will, as to the time the interest of both Viola and Dorothy should take effect.

We cannot believe that the testator intended to have his estate remain unsettled in the hands of his executors, or trustees for that matter, for an indefinite number of years, or that a portion of it remain uninvested, so that monthly payments might be made to Dorothy. To do so would completely disturb the main purposes of the testator, expressly declared and stated, and destroy, to a substantial extent, its ultimate use for the benefit of orphan children. It would lead to results which cannot be reconciled with the apparent intent of the testator.

The chancellor in the trial court, therefore, gave effect to the provisions in the codicil for the benefit of Dorothy by construing it as giving to Dorothy, after the death of Mrs. Rosenberger, the sum of $55 per month for her life from the income of the trust prior to any payment therefrom to her half-sister, Viola, instead of deferring any payment there-

from to Dorothy until $100 per month had been first paid to Viola. No exception to that ruling was taken by Viola.

■ The language of the codicil and the will, read as a whole, does not support the contention that $55 per month should be paid, either as an annuity or as a legacy, to Dorothy from the corpus of testator's estate, or the income therefrom, from and after the time of his death.

The provision for Dorothy was merely a legacy given in lieu of another. It was substitutional and not cumulative.

■ The construction of the will and codicil by the learned chancellor thus carries into effect the purpose and intent of the testator as can best be gathered from the language of his last will and testament and due consideration of the purposes specified therein.

For the foregoing reasons, the decree of the trial court is affirmed in all respects.

*Affirmed.*