# Richmond

## THE BAPTIST HOME FOR AGED WOMEN v. JOE T. MIZELL, JR., ADMINISTRATOR ETC., ET AL.

October 10, 1955.

Record No. 4404.

Present, All the Justices.

The opinion states the case.

*Hunton, Williams, Gay, Moore & Powell; Ralph H. Ferrell, Jr.* and *E. Milton Farley, III*, for the appellant.

*Robert B. Gayle* and *George E. Allen*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

Mrs. Lee Jeter Robertson, of Richmond, died May 5, 1951, leaving two writings in pencil by her own hand on two separate sheets of paper, both dated July 15, 1942, which together were probated as her last will and testament, and, with spelling and punctuation as used by her, were as follows:

"I Lee Jeter Robertson being of sound disposing mind and memory do this day July fifteenth nineteen hundred and forty two (1942) make this my last will and testment.

"I bequeath to
1st Baptist Church $300.00 dollars. All my possessions of any falaue such as my dimonds, watch, house hold goods, must be sold to highest bidder. If there is any special article that either invidual would want, why it will be their privilege to have it. All my clothes will be disposed of by Mamie Jeter my sister

"Mr. Rucker & Richardson will sell my home. All bills must be paid promptly. Also notify Veteran's Administration immideately. Should there be any money left its to go to The Baptist Home for ladies. Garnett Brooks my very dear nephew can select any thing I have in the house  Also Norma Dodson my niece or Maude & Ruth, my nieces

Mrs. Leon Robertson"

"My special request.

"In case of death at any time I want all my personal belongings to be sold to highest bidder  Including my diamond rings, brass clock, Andirons Sconces Automobile flower pedestal, etc. My sister Mamie Jeter will dispose of all my clothes and take out any thing she so desires.

"Am making this request because I do not want to hurt any one of my family by specializing any particular article

Mrs. Leon Robertson"

This suit was brought by the administrator c.t.a. to have the will construed and for directions as to its execution. Answers were filed, depositions were taken and stipulations made as to certain facts.

The issue raised and litigated was whether the will bequeathed to the appellant, Baptist Home for Aged Women (called in the will the Baptist Home for ladies), the proceeds from the sale of the home of the testatrix. The chancellor held, upon reasoning set forth in a written opinion, that it did not, but that the testatrix died intestate as to that fund and that it passed to her next of kin. The appellant assigns error to that ruling.

The effort in construing a will is to determine what the testator meant by what he said in the will. The object is to find the expressed intention of the testator. *Chavis* v. *Myrick*, 190 Va. 875, 878, 58 S. E. (2d) 881, 883; *Conrad* v. *Conrad's Ex'r*, 123 Va. 711, 716, 97 S. E. 336, 338. Where there is legitimate dispute as to meaning, the facts and circumstances existing when the will was made may be looked to in order to ascertain the meaning of the words as used by the testator. *Coffman's Adm'r* v. *Coffman*, 131 Va. 456, 462-3, 109 S. E. 454, 457; *Smith* v. *Baptist Orphanage*, 194 Va. 901, 903-4, 75 S. E. (2d) 491, 493.

Mrs. Robertson was about seventy-three years old when she died, and a childless widow. She married in the early thirties when she was around fifty and her husband died in 1936. The home here involved had been conveyed to them jointly in 1933 and his half interest passed to her by his will. She lived there until her death, alone except for occasional visits from relatives, and during World War II she rented two of the rooms in the house. She also received a small pension by reason of her husband's service in the first World War. These items along with a small amount of interest from loans and savings constituted her income.

Her home was the major part of her estate. It was sold in September, 1951, after her death, for $17,750. In 1942 when she wrote the will it would probably have brought substantially less. At the date of the will she had $775.12 in bank on savings account. The home, the cash in bank, two diamond rings which were sold for $500 in 1952, and household furniture of small value composed the bulk of her estate at that time. The savings account fluctuated widely, with frequent deposits and withdrawals. In December, 1939, it was down to $31.10. In February, 1946, it was $109.33. It increased after that date and the balance was $3,371.12 when she died. Her gross personal estate at her death amounted to $5,315.15. Her debts, including taxes and expenses of her last illness, were about $1,200; and the expenses of her funeral, which she herself arranged

for in detail before she went to the hospital the last time, were $1,195.04.

The testatrix, as stated, had no children. She left to survive her as her heirs at law four sisters and one brother, the oldest of whom was eighty-nine and the youngest seventy; six children of a deceased sister, the oldest of whom was sixty-eight and the youngest fifty-eight; and three children of a deceased brother, the oldest being sixty and the youngest fifty-four. Of the nieces and nephew named in the will, Maude and Ruth were heirs; Garnett Brooks and Norma Dodson were not, being children of a living sister. The testatrix was on friendly terms with all the members of her family. She spoke of different ones but mentioned chiefly Garnett Brooks and two sisters, one being Mrs. Jeter, named in the will, who had been sick and whom the testatrix had helped financially.

The closest friend and almost daily companion of the testatrix after her husband's death was her near neighbor, Mrs. Duke, in whose home testatrix stayed for two weeks after one of her operations. She told Mrs. Duke that her family was well taken care of.

Mrs. Robertson knew she had cancer. She had five operations, three of which were performed before she was married. The present will was written about the time she was going to the hospital for another operation. Prior to that, so Mrs. Duke testified, she had made a will in which she mentioned the Baptist Home and also a sister, but she destroyed that will when she came back from the hospital. She was a member of the First Baptist Church in Richmond and was interested in the Baptist Home. She went to the Home on one occasion and inquired about getting in, stating that she wanted to give some money to the Home. She thought she had to live in the Home to make it a gift. When told otherwise she said, "Oh, then I can make my will and give something?" She told Mrs. Duke of having visited the Home, and at a time not specified also told Mrs. Duke that she was going to the Baptist Home to live and would naturally leave them what she had. At a time also not shown she made plans to sell her home because the upkeep was too high. To another witness she said she wanted to do something for the family and for the Baptist Home. Such declarations of intention are not properly receivable in evidence. *Smith* v. *Baptist Orphanage*, *supra*, 194 Va. at 903-4, 75 S. E. (2d) at 493.

This evidence of facts and circumstances throws little, if any, light upon the intention of the testatrix beyond what is provided by

the will itself. It does not establish that the words used by the testatrix in the will had for her a meaning different from their ordinary and natural import.

When this will is read as a whole, as must be done, *Arnold v. Groobey*, 195 Va. 214, 219, 77 S. E. (2d) 382, 385, it does these things in this order:

(1) Gives to the Baptist Church $300; (2) directs that her personal belongings be sold to the highest bidder (but if "either individual," meaning apparently any member of the family, wants any special article, he or she may have it); (3) provides that Mrs. Jeter shall dispose of her clothes; (4) directs that Rucker & Richardson sell her home; (5) directs that all bills be paid promptly; also (6) that the Veterans Administration be notified of her death immediately; then (7) provides that should there be any money left it is to go to the Baptist Home; but (8) that her nephew Garnett Brooks and three of her nieces, Norma, Maude and Ruth, may select anything in the house.

The second writing merely repeats that all personal belongings must be sold to the highest bidder; that Mrs. Jeter shall dispose of her clothes and take what she wants, and states her reason for making this request to be that she does not want to hurt any member of the family "by specializing any particular article."

It seems plain that the testatrix in writing this will had clearly in mind not only all the property she owned but all of her family. It is equally clear that she wanted and directed her home and all her personal property, except such articles as members of the family might want, sold and converted into money, out of which all bills must be paid promptly, and then any money left should go to the Baptist Home.

This is the language of the will and, as stated, there is nothing in the evidence as to facts and circumstances that warrants giving the words of the will a meaning different from their normal and natural meaning. So far as the evidence aids construction, it supports the conclusion that the testatrix meant what the words she used indicate she meant. At the time of making the will she had in cash less than $800. She had already had three operations and was going or had gone to the hospital for the fourth. She was familiar with the expense of that procedure. She thought she had cancer and doubtless knew the kind and the duration of the treatments as well as the usual end of that dread disease. She could reasonably have believed

that the money she could expect to have on hand when she died would not be enough to pay the gift to the Church and what she would owe, and that the balance would have to come from the sale of the home. What would be left she did not know, but whatever it was she wanted the Baptist Home to have it for the benefit of old ladies who needed a home. She had already given aid to those of her own family who needed it. They were all now advanced in years, well taken care of and needed no further help from her.

The applicable legal presumptions add their weight to the language of the will and the effect of the evidence. The making of a will raises a very strong presumption against an intention on the part of the testator to leave part of his estate out of its operation. *Jones* v. *Brown*, 151 Va. 622, 627, 144 S. E. 620, 621. Ordinarily the only reason the testator has for making a will is to change the devolution of his property from that prescribed by the statutes of descent and distribution. There is accordingly strong presumption that the testator intended to dispose of his entire estate, and courts are decidedly averse to adopting a construction which leaves a testator intestate as to a portion of his estate, unless compelled to do so. *McCabe* v. *Cary's Ex'r*, 135 Va. 428, 433, 116 S. E. 485, 487; *Bradshaw* v. *Bangley*, 194 Va. 794, 801, 75 S. E. (2d) 609, 613; *Arnold* v. *Groobey, supra,* 195 Va. 214, 224, 77 S. E. (2d) 382, 387.

In the language of Judge Holt in *Neblett* v. *Smith,* 142 Va. 840, 850, 128 S. E. 247, 250, "when all hearts are opened and all desires known it will be found, in wills deliberately written, that there are few testators whose settled purpose was to leave untouched a part of their estate, and a residuary clause adds force to this rule."

As suggested in *McCabe* v. *Cary's Ex'r, supra,* 135 Va. at 447, 116 S. E. at 491, no absolute technical meaning may be ascribed to the word "money" in a will, and its meaning in every case must depend on the context and the surrounding circumstances proper to be considered. In that case the word was held to refer to real estate. In *M. E. Church* v. *Brotherton,* 178 Va. 155, 16 S. E. (2d) 363, it was held not to include real estate, and it was said in that opinion that when held to include land it must unmistakably appear from the will that it was the intention of the testator to give it that meaning. Appellees here rely strongly on that case; but there the land remained in kind with no direction to sell it and the will not only made no reference to it, but by its language excluded the concept that it was intended to be included in the will. Here the

will not only referred to the land but directed it to be sold and, as we think, effectively disposed of the proceeds to the Baptist Home. We find no adequate support for the view that the testatrix intended to die intestate as to the proceeds from the sale, and we hold that by her will she bequeathed said proceeds to the appellant.

The decree appealed from is accordingly reversed so far as it directs payment to the next of kin of Mrs. Lee Jeter Robertson of the sums set forth in said decree; and the cause is remanded for the entry of a decree directing payment to the Baptist Home for Aged Women of the money on deposit to the credit of the court as shown by said decree, after deducting therefrom the costs due and to become due to the clerk of the said court.

*Reversed and remanded.*