# Richmond

## LORRAINE F. PITMAN AND GEORGE M. COLES v. FRANCES GRAHAM RUTLEDGE, ET AL.

November 26, 1956.

Record No. 4588.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Thomas J. Michie*, for the appellants.

*John S. Battle* (*C. Venable Minor*, on brief), for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The executors of the will of Miss Charlotte B. Coles brought this suit for the purpose of having the will and a codicil thereto construed. Lorraine F. Pitman and George M. Coles, executors, were also legatees in their own right and being disappointed by the court's construction, which deprived them of their legacy, they prosecute this appeal. The appellees are the children of Mrs. Charles J. Graham, to whom the testatrix gave by the codicil, so the court held, the tangible personal property which she had previously given to the appellants by the will.

The will of Miss Coles was a typewritten document dated May 31, 1949, and probated March 17, 1954. It was prepared by her attorney, George M. Coles, and in twelve separate clauses designated by Roman numerals disposed of her entire estate, which was appraised at $186,091.65, composed as follows: Real estate, $34,000, being her residence property; tangible personal property (so called in the appraisement and consisting of furniture and furnishings in the residence), $7,914.50; farm machinery, $317.50; miscellaneous personalty, $1,315 (the main item of which was an automobile at $1,230); jewelry, $1,539.25; silverware, $897.50; money, $8,839.73; stocks and bonds, and accrued dividends, $131,268.17.

The will devised this property as follows:

Clauses I, II, III and IV provided for the payment of debts and taxes, and gave to named legatees a chain of colored stones, a diamond ring and a chest, mourning pin and marriage certificate.

Clause V: "All the rest and residue of my tangible personal property I give and bequeath to Lorraine F. Pitman, of Darien, Connecticut, and George M. Coles, of Charlottesville, or the survivor of them."

Clause VI gave $1,000 to a cemetery association; Clause VII gave $50,000 to trustees on specified trusts; Clause VIII gave $1,000 to a church; Clauses IX and X gave $10,000 each to two legatees; Clause XI gave "Woodville," which was her home, to Lorraine F. Pitman, charging it with the payment of legacies in Clauses VI through X; and Clause XII gave "All the rest and residue of my property, real, personal and mixed," to the Virginia Association of Workers for the Blind, Inc. Clause XIII provided that if the estate was insufficient to pay all legacies they should have priority in the order set out; and Clause XIV appointed the executors.

After the will was probated there was discovered and on May 5, 1954, admitted to probate as an additional testamentary paper an instrument written by Miss Coles on a sheet of note paper, as follows:

"If any thing should happen
to me I leave all of my
personal property to Mrs.
Charles J. Graham.
The Virginia Historical Society
can take any furniture or
china they want. but nothing
is to be sold at auction.
                              Charlotte B. Coles
April 19th 1950
My will that I have made is to be
carried out first.
                              C. B. Coles"

Mrs. Charles J. Graham, named in this writing, died before the death of Miss Coles. She lived in Pittsburgh, had visited Miss Coles and they were good friends. Her children, the appellees, in their answer to the complainants' bill claimed that under this writing their mother became entitled to the personal property of Miss Coles except

such as was specifically bequeathed to others by Clauses II, III, IV, VI, VII, VIII, IX and X of the will as above referred to.

At the same time as this writing was discovered, and in the same bureau drawer, there was found a typewritten document signed by Charlotte B. Coles and after her signature the date of June 10, 1950, under which were the words "I have typed this myself," and signed "C. B. Coles." This document was headed "I wish my things disposed of in the following way." In the first paragraph she set out what she wanted done with the furnishings at "Woodville," and in the rest of the document she said she wanted given to named donees certain designated items, consisting of portraits, bed, diamonds, watches and pieces of silver, but nothing was to be sold at auction. The concluding paragraph was: "I would like to make Marion Pitman my residuary legatee and have her dispose of the remaining things in any way that she sees fit except by Auction."

This writing was in an envelope inscribed apparently in the handwriting of Miss Coles: "Charlotte B. Coles Addition To My Will."

Probate of this document was refused by the court by the order of May 5, 1954, because not witnessed and there was no evidence that it was in existence at the time of the writing on the envelope. Over objection it was introduced in evidence at the oral hearing before the court in the present suit. At that hearing George M. Coles, the draftsman of the will, testified that the tangible personal property described in Clause V of the will was bequeathed to him and Pitman, with an understanding, a moral obligation on him, to distribute it in accordance with any memorandum that Miss Coles left to tell him how to do it. There was evidence also that Miss Coles had no relatives closer than the children of her first cousins, the appellant Pitman being a son of a first cousin and the appellant Coles being a third cousin. Miss Coles had an aversion to auction sales and a neighbor had heard her say that she did not want "her things" handled or owned by people in the neighborhood.

By the decree appealed from the court held, in accordance with the contention of the appellees, that the codicil of April 19, 1950, was intended to and did revoke Clause V of the will, and that the tangible personal property other than that expressly disposed of in the will was bequeathed to Mrs. Charles J. Graham, subject to the right of the Virginia Historical Society to take any furniture or china. The appellants contend that the writing of April 19, 1950, constituted two codicils which were completely irreconcilable and

that the second nullified the first, leaving the will in effect unchanged.

The writing of June 10, 1950, which was refused probate as stated, was not admissible evidence if looked upon as a declaration of intention by the testatrix. *Smith* v. *Trustees of the Baptist Orphanage*, 194 Va. 901, 75 S. E. 2d 491. In addition, it was not admissible and could not be of aid in the construction of the will because it was only an attempted subsequent disposition of some of the property previously given to others by the instruments which were duly probated as the last will and testament of Miss Coles, which attempt was ineffectual because not executed as required by law. 57 Am. Jur., Wills, § 1040, p. 674.

What we are called upon, therefore, to construe is the original will of May 31, 1949, together with the written instrument of April 19, 1950. We think the latter constitutes one codicil, but whether one or two the result in our view is the same.

In determining the effect of these instruments we are to ascertain the intent of the testatrix from the language used, the object being to find the expressed intent; *i.e.*, what she meant by what she wrote, *Allison* v. *Allison's Ex'ors*, 101 Va. 537, 44 S. E. 904; *Baptist Home for Aged Women* v. *Mizell*, 197 Va. 399, 89 S. E. 2d 332; or "the meaning of the words as used by the writer," Graves "Extrinsic Evidence in Respect to Written Instruments," 14 Va. Law Reg. 913. When there is legitimate dispute as to the meaning thus sought, the facts and circumstances existing at the time of the writing may be looked to for aid. *Coffman's Adm'r* v. *Coffman*, 131 Va. 456, 462-3, 109 S. E. 454, 457.

Such material facts and circumstances as were developed by the evidence are referred to above. They do not afford very substantial help and the solution lies in whether the last sentence of the codicil destroys the first and leaves the situation as if the instrument of April 19, 1950, had not been written; or whether that instrument may be fairly given some effect.

The original will, as stated, disposed of the whole estate of the testatrix. Clause V gave to Pitman and Coles all the rest and residue of her tangible personal property left after satisfying the four preceding clauses. Coles testified that this tangible personal property was left to them outright, with an understanding in the nature of a moral obligation that it was to be distributed in accordance with a memorandum to be prepared by the testatrix. Some ten months

after the date of the will she wrote the paper of April 19, 1950, and put it in an envelope addressed to Coles. The original of this instrument is before us. Its appearance is convincing that the date April 19, 1950, was written as the date of what she had just written and signed; and it is persuasive that the sentence immediately under that date was written and signed at the same time. In the first sentence she left all of her personal property to Mrs. Graham. In the next sentence she said the Virginia Historical Society could take any furniture or china they wanted. In the next she added that nothing was to be sold at auction. Then she signed her name and wrote the date. Immediately under the date she wrote: "My will that I have made is to be carried out first" and signed again by the abbreviated signature "C. B. Coles".

It is not illogical to conclude that after she had signed her name to what she had first written the thought came to her that by the will she had made she had given some of this personal property to others, as she in fact had in Clauses II, III, and IV, and had likewise given to others all of her intangibles and real estate. It is true that in Clause V she had given to Pitman and Coles all the rest of her tangible personal property that remained after the preceding bequests; but that had been with the understanding that she would later tell them what to do with it. With that thought she decided she had better make it plain that she did not mean by what she had just written to disturb the will except as to the personal property she had left to Pitman and Coles and which she had not given to them to be their own but to be distributed by them as she later would direct. With that thought and purpose in mind she wrote the final sentence of that instrument, not to destroy and make a nullity of what she had just written but simply to explain that what she had written was not to change her will but only to dispose of the personal property she had given to Pitman and Coles to be held subject to her directions. If she had meant to nullify what she had just gone to the trouble of writing, the natural and reasonable thing would have been simply to tear it up. Instead she preserved it and put it into an envelope addressed to George Coles.

It is an established principle in the construction of a will that the court will endeavor to give effect to every part of it, and to reconcile two apparently inconsistent provisions rather than to ignore either or declare both void, and a codicil is to be construed as far as possible to harmonize with the provisions of the will. 2 Page on

Wills, § 932; *Rosenberger* v. *Rosenberger*, 184 Va. 1024, 1041-2, 37 S. E. 2d 55, 63.

" 'As a general thing, a codicil will be construed as operative upon some portions of the estate, even where its terms, literally interpreted, would be found to have no operation, but, as we have before said, the codicil will be construed as being consistent with the will where the discrepancy claimed is not obviously intended by the testator.' 1 Redfield on Wills, p. 360." *Miller* v. *Buchanan*, 114 Va. 76, 81, 75 S. E. 773, 774.

That case involved a problem quite similar to the one here and the reasoning employed in its solution is applicable and compelling in this case. There the testatrix made a will which disposed of all her real and personal estate, and with respect to the latter bequeathed certain choses in action to specific legatees. She then gave "all the rest and residue of my said estate" to the executor with directions to pay a sum certain to two named persons and the balance to her nephews and nieces. About a year later she executed a codicil in which she directed her executor to turn over to her nephew, W. B. Clark, all of her personal property "not disposed of by my will above mentioned," except a few small items to others.

The contest was between the nephews and nieces in the residuary clause and W. B. Clark, the chief beneficiary named in the codicil. The court said the two instruments must be read and construed together in their entirety, and so as to give effect as far as possible to both. The words of the codicil "not disposed of by my will," it was said, sustained the contention of the residuary legatees if taken literally, but a literal interpretation would lead to results which could not be reconciled with the apparent intention of the testatrix and also to an entire nullification of the codicil, both of which results were at variance with elementary rules of construction. The specific bequests and directions in the will are always to be favored as against the taker of the residue; and by giving effect to those specific bequests there was something for the words "not disposed of" to operate on, and at the same time give some effect to the codicil.

The court said it did not overlook the rule of construction that a clear gift is not to be cut down by any subsequent provision unless the latter is equally clear, but that the case in judgment did not fall within the influence of that rule, and was governed by the converse of it. The will and codicil together were construed as

giving the specific bequests in the will to the named beneficiaries and the residue of the personalty to W. B. Clark.

In *Earl of Hardwicke* v. *Douglas,* 7 Clark and Finnelly 795, a case in the English House of Lords, where the testator bequeathed the residue of his personal estate to named legatees, and by a codicil afterwards gave to others "all the rest and residue of my property not hereinbefore (or by my will or any other codicil)" given to others, the instruments were given a similar construction on similar reasoning to that in *Miller* v. *Buchanan.*

The appellants further contend that if the codicil does not cancel itself out and is to be given some effect, then the personal property given Mrs. Graham should be construed as meaning "personal effects". There are, as appellants say, many cases in which the words "personal property" have been so construed, and they cite a number of them. But in those cited and in others the meaning of either phrase must be determined by the context of the instrument in which they appear, with such aid as is afforded by the surrounding circumstances. *Bennett* v. *Bradley,* 149 Va. 746, 141 S. E. 756; *Coffman's Adm'r* v. *Coffman, supra,* 131 Va. at 469-70, 109 S. E. at 459. We do not find in this will and codicil and the surrounding circumstances any evidence that by the words "personal property" the testatrix meant to include only articles of apparel and personal adornment. Immediately after the sentence in the codicil giving to Mrs. Graham "all of my personal property," she wrote what would appear to be a qualification of that gift, that the Virginia Historical Society could take any furniture or china, which indicated that she was not thinking only of personal effects. It is presumed that the testatrix used the words here in their ordinary meaning and that she meant them to have the same meaning as elsewhere in her will. *McKinsey* v. *Cullingsworth,* 175 Va. 411, 415, 9 S. E. 2d 315, 316; *Gray* v. *Francis,* 139 Va. 350, 361, 124 S. E. 446, 450.

The interpretation of wills is, of course, not an exact science. The harmonious construction of inharmonious writings often can only be approximated. In the solution of the problem, as remarked by Professor Graves ("Extrinsic Evidence in Respect to Written Instruments," *supra*), cases arise in which "probability becomes the guide of interpretation, as it has been said to be the guide of life." Yet the mere fact that the finding of the true intent of the codicil presents difficulties does not justify declaring it void for uncertainty

if it is possible to arrive at a reasonable construction that will give validity to its dispositions and carry out the wishes of the testatrix. " 'That construction is to be adopted which will sustain and uphold the will in all its parts, if it can be done consistently with the established rules of law. * * *.' " *Missionary Society* v. *Hospital*, 163 Va. 114, 133-4, 176 S. E. 193, 200.

We hold that the construction of the will and codicil as made by the trial court reasonably interprets the meaning of the language of those instruments as used by the testatrix. The decree appealed from is accordingly

*Affirmed.*

SPRATLEY, J., dissenting.

I do not read the paper writing probated on May 5, 1954, referred to by the majority as a codicil, as having the meaning and effect given to it by my associates. I find it impossible to tell whether the two provisions in that instrument were each written on April 19, 1950. Nor can I agree that whether they be considered as constituting one codicil or two the result would be the same. Certainly the two provisions are irreconcilable. The first revokes Clause 5 of the will and the second revokes the first provision, thereby leaving in effect Clause 5 of the will. The second provision is clear and unambiguous. If it be given effect, the second becomes wholly ineffective.

It is pure speculation or surmise to say that both provisions were written on April 19, 1950. It is not probable that testatrix would have written the inconsistent provisions at the same time. There are even stronger reasons for believing that the two provisions were not written at the same time. On April 19, 1950, when the first provision was written, Mrs. Charles J. Graham was living. Subsequent to that date and prior to the death of testatrix, Mrs. Graham's death occurred. Mrs. Graham was not related by blood or marriage to the testatrix. She lived in Pittsburgh, Pennsylvania, many miles from the home of the testatrix, and was merely a friend. There is nothing in the record to show that testatrix ever knew the children of her friend or desired them to possess any portion of her property. Therefore, after the death of Mrs. Graham, the testatrix expressed the wish that, "My will that I have made is to be carried out first."

There can be no question but that the second provision was written after the first in point of time, although it may have been only a short period. The instrument shows on its face that after the first provision was written, a date was added. Following the date there was added the second provision, and so far as any one can tell it may have been a day, a month, or a year after April 19, 1950, and such a time after the death of Mrs. Graham. It was, in any event, the last wish of the testatrix. Surely she had some purpose in adding it to the instrument. The provision should be given its plain meaning and not be regarded as a vain act. All of the authorities are in accord that where two provisions of a will are irreconcilable, the later provision should prevail.

I would give effect to the last expressed wish of the testatrix. I find no support for a contrary view in the cases of *Earl of Hardwicke* v. *Douglas*, 7 Clark & Finnelly 795, and *Miller* v. *Buchanan*, 114 Va. 76, 75 S. E. 773. In those two cases, the controlling question involved the interpretation of language different from that now before us, and effect was given to the last expressed wish of the testator in each case.